# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
March 12, 2014

Lyle W. Cayce
Clerk

No. 12-40012

FREDDIE R. COLEMAN,

Plaintiff-Appellant

v.

DAVID SWEETIN; GREGORY OLIVER; RICHARD COWAN; ROY BROWN,
Sued in his official and individual capacity; SHELIA DALE, Sued in her official
and individual capacity; MAE COBBS, Sued in her official and individual
capacity; DEBBIE ERWIN, Sued in her official and individual capacity; CRAIG
FISHER, Sued in his official and individual capacity; BLAKE LAMB, Sued in his
official and individual capacity; UNKNOWN MCMANUS, Sued in her official
and individual capacity; BRENDA HOUGH, Sued in her official and individual
capacity,

Defendants-Appellees

Appeal from the United States District Court
for the Eastern District of Texas

Before DAVIS and JONES, Circuit Judges, and MILAZZO,[*] District Judge.
PER CURIAM:

Plaintiff Freddie Coleman, Texas Inmate No. 618875, appeals from the
district court's *sua sponte* dismissal of his 42 U.S.C. § 1983 suit as frivolous, for
failure to state a claim upon which relief can be granted, and for want of
prosecution. We hold that he does not state a claim under the Eighth

[*] District Judge for the Eastern District of Louisiana, sitting by designation.

No. 12-40012

Amendment with the contention that a slippery shower condition may inflict cruel and unusual punishment. We affirm in part, but also reverse in part, and remand for further proceedings.

I.

A.

Coleman filed this action *pro se* and *in forma pauperis* for injuries sustained while incarcerated at the Eastham Unit of the Texas Department of Criminal Justice ("Eastham"). He alleged that the shower floor of the "C Dorm" was slippery and unsafe. Coleman further alleged that at least thirteen inmates provided him with declarations that they had sustained injuries from slipping and falling in the C Dorm shower and other dorm showers in Eastham.

Coleman contends that defendants David Sweetin, Eastham Senior Warden, and Gregory Oliver, Eastham Assistant Warden, were aware of these dangerous conditions yet chose not to take corrective action. For example, on June 8, 2009, Coleman verbally informed Oliver that, while working in Eastham's laundry facilities, he witnessed three inmates fall in the C Dorm shower. Oliver allegedly responded: "You don't need to worry about what's going on with the shower floor. You need to worry about what's going on with the washing machine." Additionally, between the months of April and May 2009, Coleman sent three "I-60's" to defendants Richard Cowan and Roy Brown, Eastham Maintenance Supervisors, informing them of the dangerous shower conditions. Cowan and Brown advised that they were unable to address the problem without a work-order from a "team supervisor" or permission from the warden.

Coleman allegedly fell in the C Dorm shower on or about June 14, 2009. He informed defendant Sheila Dale, Eastham Officer, of the incident. He stated that he was in severe pain and could not move his right leg. Dale advised that Coleman must wait until the next day for medical treatment because the

No. 12-40012

infirmary was closed. Coleman insisted that it was an emergency. Dale refused to call her supervisor and never filed an accident report.

On or about June 20, Coleman allegedly fell in the C Dorm shower for a second time. Coleman complained to defendant May Cobbs, Eastham Officer, of the incident and stated that he was in severe pain and could not move his right leg. Cobbs responded that the infirmary was closed and medical treatment would have to wait until tomorrow morning. Coleman stated that he was in extreme pain and that x-rays were necessary because he heard something "pop[] like a break." Cobbs refused to call her supervisor and did not file an accident report.

On or about June 23, Coleman was examined by defendant Cheryl McManus, a visiting physician's assistant. Coleman explained that he experienced severe pain ever since he fell in the C Dorm shower on June 14 and June 20. Coleman complained that he could neither move his right leg nor stand upon it. McManus ordered an x-ray. She subsequently examined the film and opined that Coleman suffered from an acute case of arthritis. The x-ray technician allegedly disagreed, explaining that the x-ray revealed something "more than arthritis." McManus responded that the she did not need the technician's help.[1] McManus refused to prescribe pain medication and cleared Coleman to return to work, albeit with crutches. Coleman protested (to no avail) that Eastham was not handicap accessible.

Coleman returned to work at Eastham's laundry facilities later that afternoon. Coleman informed Cobbs that he felt physically unable to perform his duties. Cobbs allegedly responded that, absent a "lay-in," Coleman was required to work or would be disciplined. Coleman's co-worker observed that Coleman was in pain. The co-worker relieved Coleman from his duties and implored him

---

[1] Coleman alleged in his complaint that Dr. Betty Williams subsequently stated that McManus was not qualified to read x-rays.

No. 12-40012

to lay down. Coleman left the work site and subsequently attempted to take a shower. While in the shower, Coleman alleges that he fell for a third time after his crutches slipped out from underneath him.

On July 6, Coleman's prison unit was put on "lockdown" in order to search for contraband. By July 8, Coleman alleged that he was in so much pain that he felt "hysterical." He was unable to lie in bed. The pain also prevented Coleman from using the toilet, so he was forced to defecate in a bowl.

Beginning on some unknown date, Coleman wrote "sick call request slips" daily for 20-25 days. Coleman alleged that each was answered and subsequently disregarded by defendant Brenda Hough, an Eastham Nurse Practitioner.

On or about July 10, while Coleman's unit was still on lockdown, Hough and another nurse made "sick calls" to prisoner cells. After observing Coleman's crutches, Hough determined that she could not treat Coleman without using an examination table. Because no examination tables were available at the time, Hough refused to examine Coleman. Coleman pleaded with the nurses to take him to the infirmary. Coleman explained that he experienced extreme pain and believed that his right hip was broken. Hough responded that she was not authorized to transport inmates to the infirmary unless they were "bleeding or dying." Hough refused to provide pain medication and suggested that Coleman continue to submit sick call requests.

Defendants Debbie Erwin, Eastham Assistant Warden, and Major Craig Fisher visited Coleman's cell on or about July 12. Coleman's unit was still on lockdown at the time. Coleman informed the defendants he had fallen in the shower on three separate occasions, that he experienced severe pain and could not move his leg, that he was unable to sleep or use the toilet, and that he had attempted, unsuccessfully, to visit the infirmary since June 23. Fisher instructed Erwin to record Coleman's name and number. Coleman alleged that Erwin and Fisher never contacted the infirmary on his behalf.

4

No. 12-40012

On or about July 13, Coleman was summoned for a disciplinary hearing before Defendant Captain Blake Lamb.[2]  At some point during the hearing, Coleman complained of his injuries and unsuccessful attempts to obtain medical treatment.  Lamb responded that he was "running disciplinary court not sick-call" and refused to help.  Coleman pleaded for Lamb to reconsider his position. Lamb ordered Coleman to leave his office.

Hough examined Coleman after lockdown was lifted on July 18.  She recognized that he was in pain and ordered an x-ray.  Hough informed Coleman, however, that the x-ray could not be taken until three days later when the x-ray technician was scheduled to return.  Coleman requested an emergency x-ray, complaining that he had experienced pain since late June.  Hough responded that he could "tough it out three more days."  Coleman then requested pain medication for his hip.  He described the pain as having overtaken his entire body.  Hough refused to provide medication.

Coleman was x-rayed on July 21 and diagnosed with a fractured hip. Hough apologized for ignoring Coleman's previous complaints and arranged for him to be seen at the John Sealy Hospital in Galveston.  In preparation for transport, Coleman was placed in a wheelchair which was subsequently loaded into the back of a van.  Coleman described cramped and uncomfortable conditions.  He complained to Hough that he was in pain and requested pain medication for the trip.  Hough refused this request.

Coleman was transported approximately 178 miles to the hospital on a "rough and bumpy" road.  By the time he arrived at the hospital, Coleman described himself as "out of it" due to the pain.  Doctors subsequently inserted four pins and a plate during hip surgery.  Coleman continues to suffer from pain

---

[2] Coleman had been previously written up for having an "extra set of clothes pressed."

5

No. 12-40012

and takes "notriptyline," which he described as a psychotic drug for depression and pain.

B.

Coleman filed suit *pro se* and *in forma pauperis* against Sweetin, Oliver, Cowan, Hough, Brown, Dale, Cobbs, Erwin, Fisher, Lamb, and McManus in federal court on September 27, 2010. Coleman alleged violations of the Eighth Amendment for unsafe prison conditions and inadequate medical care.

The magistrate judge held a *Spears* hearing on April 21, 2011. Nurse Tara Patton confirmed that Coleman's prison file contains two x-rays, numerous I-60's to the medical department, and documentation from the Galveston hospital. Patton stated that the second x-ray revealed a "definitive" fracture.

The magistrate judge then questioned Ginger Lively, a grievance coordinator, as to whether Coleman had exhausted grievance procedures against all defendants. Lively stated that he had "exhausted on his medical issues" but not his complaints regarding the condition of the dorm shower.

The magistrate judge issued a report on April 25, 2011, recommending that Coleman's claims against all defendants except McManus be dismissed under 28 U.S.C. § 1915A(b)(1). In the alternative, the magistrate judge noted that Coleman had not exhausted his claims against "security personnel."

The district court subsequently received consent from the parties to proceed before the magistrate judge pursuant to 28 U.S.C. § 636(c). Each party's consent was signed prior to April 25, 2011. The district court referred the case to the magistrate judge for all proceedings on May 6, 2011.

The magistrate judged issued a memorandum opinion and order of partial dismissal on May 12, 2011. The order was virtually identical to the April 25, 2011, report and recommendations.

On May 18, 2011, Coleman moved for an extension of time to file objections to the report and recommendations. The magistrate judge denied the motion,

reasoning that because the parties provided consent under 28 U.S.C. § 636(c), the normal procedures associated with a report and recommendations were no longer applicable.

On May 31, 2011, the Texas Attorney General's office ("AG") filed an *amicus curiae* motion stating that it had been unable to contact McManus and therefore could not file a responsive pleading on her behalf. The AG provided McManus's last known address under seal. The magistrate judge then directed the Clerk of Court to order a United States Marshal to serve process.

On October 5, 2011, the magistrate judge issued an order stating that the United States Marshal returned the summons for McManus unexecuted. Coleman was given twenty days from the receipt of the order to provide a current address for McManus.[3]  On October 24, 2011, the magistrate judge granted in part Coleman's motion for an extension of time to submit a current address for McManus. The deadline was extended until November 22, 2011. Coleman was warned that no further continuances would be granted.

On November 28, 2011, as a result of Coleman's failure to provide a current address for McManus, the magistrate judge dismissed Coleman's claims without prejudice. The order noted that the dismissal was, *de facto*, with prejudice, given the expiry of the statute of limitations. Final judgment was entered the same day. Coleman timely appealed.[4]

---

[3] The magistrate judged appeared to assume that service of process failed because the address provided by the AG's office was not current. Yet there is nothing in the record to suggest that service failed for this reason. The record only reflects that the summons for McManus was returned unexecuted.

[4] Coleman first contends the magistrate judge erred by dismissing his claims on May 12, 2011, prior to the deadline for filing objections to the April 25, 2011, report and recommendations. We disagree. Under 28 U.S.C. § 636(b)(1), litigants may object to a report and recommendations within fourteen days after service of same. If, however, the parties consent to proceed before the magistrate judge, the magistrate judge may, with the district court's approval, "conduct any or all proceedings . . . and order the entry of judgment." 28 U.S.C. § 636(c)(1). When the magistrate judge enters judgment, an aggrieved party appeals

No. 12-40012

## II.

Coleman argues the magistrate judge erred by dismissing his claims against certain defendants for failure to exhaust administrative remedies. We review dismissals for failure to exhaust *de novo*. *Carbe v. Lappin*, 492 F.3d 325, 328 (5th Cir. 2007).

The Prison Litigation Reform Act of 1995 requires a prisoner to exhaust all available grievance procedures before filing suit. 42 U.S.C. § 1997e(a). This requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes." *Porter v. Nussle*, 534 U.S. 516, 532, 122 S. Ct. 983, 992 (2002).

In *Jones v. Bock*, the Supreme Court held that exhaustion is an affirmative defense, rather than a pleading requirement the prisoner must satisfy in his complaint. 549 U.S. 199, 216, 127 S. Ct. 910, 921 (2007). As such, it is error to dismiss a prisoner's complaint for want of exhaustion before a responsive pleading is filed unless the failure to exhaust is clear from the face of the complaint. *Carbe*, 492 F.3d at 328. District courts may not circumvent this rule by considering testimony from a *Spears* hearing or requiring prisoners to affirmatively plead exhaustion through local rules. *See id.*

In response to question III on his form complaint, which seeks information regarding the inmate's exhaustion of administrative remedies, Coleman attached copies of the "Step 2" grievances that he previously submitted to prison authorities. He did not otherwise mention exhaustion in his complaint. Thus, in concluding that Coleman failed to exhaust administrative remedies, the

---

directly to the court of appeals "in the same manner as an appeal from any other judgment of a district court." 28 U.S.C. § 636(c)(3).

By consenting to proceed before the magistrate judge, Coleman also consented to the entry of final judgment pursuant to 28 U.S.C. § 636(c)(3). Thus, any relief from that judgment lies with this court. Furthermore, Coleman does not explain how the failure to consider his objections was prejudicial, given that he was free to raise the same arguments in a motion to reconsider or on appeal.

No. 12-40012

magistrate judge necessarily relied upon the Step 2 grievances or Lively's testimony from the *Spears* hearing. Either basis constitutes reversible error.[5]

### III.

Because we cannot rely on the affirmative defense of failure to exhaust, we must first consider the sufficiency of Coleman's complaint against Sweetin, Oliver, Cowan, and Brown for unsafe prison conditions. We review dismissals under 28 U.S.C. § 1915A *de novo. Green v. Atkinson*, 623 F.3d 278, 280 (5th Cir. 2010) (per curiam). We accept the facts alleged in the complaint as true and construe them in the light most favorable to Coleman.[6] *Id.* Thus, Coleman's suit can only be dismissed for failure to state a claim if the facts, taken as true, do not "state a claim that is plausible on its face." *Amacker v. Renaissance Asset Mgmt. LLC*, 657 F.3d 252, 254 (5th Cir. 2011). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009). This includes the basic requirement that the facts plausibly establish each required element for each legal claim. *Id.* at 682-83; *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557, 127 S. Ct. 1955 (2007). However, a complaint is insufficient if it offers only "labels and conclusions," or "a formulaic recitation of the elements of a cause of action." *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1955).

---

[5] This result is consistent with unpublished decisions in which we have interpreted *Jones* and *Carbe* to prohibit the use of form complaints to elicit information regarding a prisoner's exhaustion of administrative remedies. *See, e.g., Chamberlain v. Chandler*, 344 F. App'x 911 (5th Cir. 2009) (per curiam); *McDonald v. Cain*, 426 F. App'x 332 (5th Cir. 2011) (per curiam).

[6] We also accept as true Coleman's testimony in the *Spears* hearing. *See Eason v. Holt*, 73 F.3d 600, 603 (5th Cir. 1996) (explaining that a *Spears* hearing "amplif[ies] the allegations in the prisoner's complaint" and therefore "becomes a part of the total filing by the *pro se* applicant").

No. 12-40012

Conditions of prison confinement are subject to Eighth Amendment scrutiny. *Farmer v. Brennan*, 511 U.S. 825, 832, 114 S. Ct. 1970, 1976 (1994). The "[u]nnecessary and wanton infliction[] of pain" provides the lodestar for Eighth Amendment analysis. *See Hope v. Pelzer*, 536 U.S. 730, 737, 122 S. Ct. 2508, 2514 (2002). An Eighth Amendment claim has two elements. *Farmer*, 511 U.S. at 834, 114 S. Ct. at 1977. "First, the deprivation alleged must be, objectively, sufficiently serious" such that the prison official's act or omission constitutes a "denial of the minimal civilized measures of life's necessities." *Id.* (internal quotation marks omitted). Second, the "prison official must have a sufficiently culpable state of mind," *i.e.*, he must act with "deliberative indifference" to inmate health and safety. *Id.* A prison official acts with the requisite mental state when he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.*

In dismissing Coleman's claims against Sweetin, Oliver, Cowan, and Brown, the lower court essentially held that prisoner slip-and-fall claims almost never serve as the predicate for constitutional violations as a matter of law. We agree with this conclusion.

Coleman fails to state a claim as to the first prong of the *Farmer* test. A slippery shower floor, although a potential hazard, is "a daily risk faced by members of the public at large." *Reynolds v. Powell*, 370 F.3d 1028, 1031 (10th Cir. 2004); *see also LeMaire v. Maass*, 12 F.3d 1444, 1457 (9th Cir. 1993); *Jackson v. Arizona*, 885 F.2d 639, 641 (9th Cir. 1989) ("slippery prison floors . . . do not state even an arguable claim for cruel and unusual punishment"). Other federal courts, including district courts in this circuit, have frequently rejected

No. 12-40012

constitutional claims arising from slip and fall accidents.[7] The usual reasoning is that the existence of slippery conditions in any populous environment represents at most ordinary negligence rather than a condition so threatening as to implicate constitutional standards. One exception serves to reinforce this general rule of rejection. In *Frost v. Agnos*, 152 F.3d 1124, 1128-29 (9th Cir. 1998), the court reversed summary judgment for a prisoner who asserted an Eighth Amendment claim after he slipped and fell in the shower while on crutches. The *Frost* decision, however, rests on defendants' failure to accommodate his disabled condition, not simply on the slippery floor. Earlier, in *LeMaire*, the Ninth Circuit refused to hold that "shackling a dangerous inmate in a shower creates a sufficiently unsafe condition." Thus, that Coleman asserts foreknowledge of the slippery conditions by the wardens and maintenance supervisors is not relevant to the first prong of *Farmer*.

## IV.

The Eighth Amendment requires that inmates receive "adequate medical care." *See Rogers v. Boatright*, 709 F.3d 403, 409 (5th Cir. 2013) (internal quotation marks omitted). Prison officials may violate this mandate when they exhibit "deliberate indifference to a prisoner's serious medical needs." *Easter v.*

---

[7] *See Noble v. Grimes*, 350 F. App'x 892, 893 (5th Cir. 2009) (affirming dismissal as frivolous of prisoner § 1983 claim that defendant was deliberately indifferent by failing to correct slippery shower floor); *Beasley v. Anderson*, 67 F. App'x 242, 242 (5th Cir. 2003) (same); *Mack v. Johnson*, 48 Fed. App'x 105, 105 (5th Cir. 2002) (same); *Marsh v. Jones*, 53 F.3d 707, 712 (5th Cir. 1995) (holding that Eighth Amendment violation based on wet floor caused by leaking or sweating air conditioner unit); *Denz v. Clearfield Cnty.*, 712 F.Supp. 65, 66 (W.D. Pa. 1989) (finding no Eighth Amendment violation based on a slippery floor in prison cell); *Mitchell v. West Virginia*, 554 F.Supp. 1215, 1216-17 (N.D.W. Va. 1983) (finding no Eighth Amendment violation based on slippery floor in prison dining hall); *Robinson v. Cuyler*, 511 F.Supp. 161, 162, 163 (E.D. Pa. 1981) (finding no Eighth Amendment violation based on slippery floor in prison kitchen); *Tunstall v. Rowe*, 478 F.Supp. 87, 88, 89 (N.D. Ill. 1979) (finding no Eighth Amendment violation based on greasy prison stairway); *Snyder v. Blankenship*, 473 F.Supp. 1208, 1209, 1212-13 (W.D. Va. 1979) (finding no Eighth Amendment violation based on pool of soapy water from leaking dishwasher in prison kitchen), *aff'd*, 618 F.2d 104 (4th Cir. 1980).

*Powell*, 467 F.3d 459, 463 (5th Cir. 2006). We address the defendants against whom these allegations were made.

The magistrate judge concluded that prior to Coleman's June 23 x-ray, none of the defendants were aware of Coleman's serious medical needs. Whether this is correct or not, we do not explore, because Coleman did not adequately brief in this court any contention that the magistrate judge erred in dismissing Dale and Cobbs, the correction officers who saw him after his first two falls. *Yohey v. Collins*, 985 F.2d 222, 225 (5th Cir. 1993) (pro se appellants' "arguments must be briefed to be preserved.").

Coleman's allegations suggest that Erwin and Fisher became aware of his serious medical needs. He informed them during lockdown that he had fallen multiple times, his right hip was broken, and he was unable to move his leg, lie in bed, or use the toilet. Coleman also stated that despite his best efforts, he had been unable to visit the infirmary for the last four weeks. Fisher allegedly told Erwin to write down the report, but they allegedly did not follow up.

The complaint also alleges that Lamb was aware of Coleman's serious medical needs. At some point during his disciplinary hearing, Coleman informed Lamb that he was in pain, that he could not move his leg, and that he already asked several officials for medical attention but had been ignored.

In order to demonstrate deliberate indifference when alleging inadequate medical treatment, a prisoner must show that officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (internal quotation marks omitted). Assuming, as we must, that the facts alleged in the complaint are true, Erwin and Fisher ignored Coleman's complaints and pleas for help. We must reverse the dismissal of these defendants and remand for further proceedings.

No. 12-40012

With regard to defendant Lamb, however, the mere allegation that Coleman complained of his pain and lack of official response during a disciplinary proceeding Lamb conducted on an entirely different matter does not suffice for Eighth Amendment purposes. Lamb, unlike Erwin and Fisher, is not alleged to have had duties at the prison other than with respect to this discipline proceeding. Coleman cannot show from the single encounter enough of an interaction with Lamb to demonstrate Lamb's potential deliberate indifference.

Coleman alleges that Hough refused to treat him until July 18, 2009. We have repeatedly held that "'[d]elay in medical care can only constitute an Eighth Amendment violation if there has been deliberate indifference [that] *results in substantial harm*.'" *Easter*, 467 F.3d at 464 (second alteration and emphasis in original) (quoting *Mendoza v. Lynaugh*, 989 F.2d 191, 193 (5th Cir. 1993)). Coleman suffered substantial harm as a result of Hough's persistent refusal to answer his "sick-call request slips" or provide pain medication even when he was in so much pain that he was unable to lie down in bed or use the toilet properly. Hough also refused to provide pain medication in anticipation of Coleman's long trip to the hospital, causing him to suffer greatly. These allegations are sufficient to raise the possibility of Hough's deliberate indifference to Coleman's serious medical needs. We reverse the dismissal of Hough and remand for further proceedings.

V.

Coleman contends the magistrate judge erred by dismissing his claims against McManus for want of prosecution and failure to obey a court order. Rule 41(b) authorizes the district court to dismiss an action *sua sponte* for failure to prosecute or comply with a court order. *See Long v. Simmons*, 77 F.3d 878, 879 (5th Cir. 1996). We review for abuse of discretion. *Bryson v. United States*, 553 F.3d 402, 403 (5th Cir. 2008). Our review is more exacting where, as here, "the dismissal is without prejudice but the applicable statute of limitations

No. 12-40012

probably bars future litigation."[8] *Boazman v. Econ. Lab., Inc.*, 537 F.3d 210, 213 (5th Cir. 1976).   We review such dismissals as we would dismissals with prejudice.   *See Berry v. Cigna/Rsi-Cigna*, 975 F.2d 1188, 1191 (5th Cir. 1992).

"Dismissal with prejudice . . . is an extreme sanction that deprives a litigant of the opportunity to pursue his claim."   *Gonzales v. Firestone Tire & Rubber Co.*, 610 F.3d 241, 247 (5th Cir. 1980).   A dismissal with prejudice will be affirmed only if: (1) there is a clear record of delay or contumacious conduct by the plaintiff, and (2) lesser sanctions would not serve the best interests of justice.   *Sealed Appellant v. Sealed Appellee*, 452 F.3d 415, 417 (5th Cir. 2006).   Because this test is conjunctive, both elements must be present.[9]

The lower court dismissed McManus because Coleman failed to provide a current address in order to effectuate service of process.   Special rules govern the procedure for service of process when plaintiffs proceed *in forma pauperis*.   *Lindsey v. U.S. States R.R. Retirement Bd.*, 101 F.3d 444, 446 (5th Cir. 1996).   Under 28 U.S.C. § 1915(d) and Rule 4(c)(3), the district court is required to order that service be made by an officer of the court.   The propriety of the lower court's dismissal must be reviewed in light of these provisions.

When he learned that the marshal had not served process, Coleman moved to continue the deadline for providing McManus's current address two weeks after he was ordered to furnish it.   As grounds for the continuance, Coleman stated that he intended to seek discovery from the Galveston Hospital, the Texas Department of Criminal Justice, and the "U.T.M.B."   The magistrate judge

---

[8] We have applied this heightened standard of review where the underlying basis for dismissal was untimely service of process. *See Millan v. USAA Gen. Indem. Co.,* 546 F.3d 321, 326 (5th Cir. 2008) (collecting cases).

[9] In addition, we generally affirm dismissals with prejudice only upon a finding of at least one of three aggravating factors: "(1) delay caused by [the] plaintiff himself and not his attorney; (2) actual prejudice to the defendant; or (3) delay caused by intentional conduct." *Price v. McGlathery*, 792 F.2d 472, 474 (5th Cir. 1986).

No. 12-40012

granted the motion in part and extended the deadline by approximately one month. Coleman's request to conduct additional discovery was denied because the AG had already submitted McManus's last known address. Thus, the magistrate judge concluded that it would be futile "to conduct discovery for an address that has already been provided." Coleman received the order on November 2, 2011. Coleman did not provide McManus' current address and the magistrate judge dismissed Coleman's claims on November 28, 2011.

Coleman's failure to provide a current address for McManus constitutes, at worst, negligent behavior. Moreover, it does not follow from the AG's inability to provide a current address for McManus that any attempt to discover the address from the Galveston Hospital, Texas Department of Criminal Justice, U.T.M.B., or any other entity would be futile. Under the circumstances, Coleman did not exhibit the recalcitrance that our case law requires for a dismissal with prejudice.

Because the record is devoid of material delay or contumacious conduct, we reverse the dismissal of McManus and remand for further proceedings.

VI.

For the reasons previously stated, we affirm the dismissals of defendants Sweetin, Oliver, Cowan, Brown, Dale, Cobbs, and Lamb; we reverse and remand the dismissals of defendants Erwin, Fisher, Hough, and McManus for further proceedings in accordance herewith.

**JUDGMENT AFFIRMED IN PART, REVERSED AND REMANDED IN PART.**