# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

————

No. 15-10163

————

United States Court of Appeals
Fifth Circuit

**FILED**
September 9, 2016

Lyle W. Cayce
Clerk

JAY ANTHONY NOTTINGHAM, also known as Jay Nottingham, also known as Jeffrey Montgomery, also known as Jay Dillon,

Plaintiff–Appellant,

v.

WARDEN, Bill Clements Unit; UNNAMED ADMINISTRATIVE STAFF; UNNAMED MEDICAL STAFF,

Defendants–Appellees.

————

Appeal from the United States District Court
for the Northern District of Texas

————

Before PRADO, OWEN, and HAYNES, Circuit Judges.

PRISCILLA R. OWEN, Circuit Judge:

Jay Nottingham, proceeding pro se, appeals the district court's dismissal of this suit pursuant to Federal Rule of Civil Procedure 41(b) for failure to comply with court orders. Because we conclude that the district court did not abuse its discretion, we affirm.

## I

Nottingham filed a complaint in the district court, alleging constitutional violations arising out of his incarceration in a Texas Department of Criminal Justice prison. The day he filed the complaint, Nottingham also filed an application to proceed *in forma pauperis* (IFP). Recognizing several defects

No. 15-10163

and inconsistencies in the IFP application, MAGISTRATE JUDGE AVERITTE issued an order directing Nottingham to provide corrected financial disclosures by answering detailed questions in a questionnaire. Rather than comply with this order, Nottingham paid the filing fee.

MAGISTRATE JUDGE AVERITTE then issued an order noting that in two prior cases, Nottingham had engaged in "similar conduct" by applying for IFP status and then paying the filing fee rather than complying with an order to provide verifiable information in support of the IFP application. The court expressed concern based on this pattern as to "whether [Nottingham's] initial request for pauper status was proper," and specifically directed Nottingham to comply with its previous order requiring him to file corrected and complete financial information using the questionnaire provided, notwithstanding his payment of the filing fee.

In response to this second order, Nottingham filed a "motion to withdraw [the] request to proceed *in forma pauperis*," in light of his payment of the filing fee. Nottingham's motion also sought the court's withdrawal of its "request" for compliance with its previous orders, asserting that he had "paid all filing fees and [wa]s no longer required to file any financial statement."

MAGISTRATE JUDGE AVERITTE granted Nottingham's motion to withdraw the original IFP application, acknowledging that the application "appear[ed] to have been rendered moot" by Nottingham's payment of the filing fee. However, the court denied Nottingham's motion for the withdrawal of the requirement that he comply with its financial disclosure directives. The court held that neither of the orders requiring Nottingham to complete the questionnaire had been mooted by the payment of the filing fee and that the same concerns that the court had regarding Nottingham's original IFP application remained. The court explained that litigants are required to comply with court orders and may be sanctioned for failing to do so and directed

2

No. 15-10163

Nottingham to comply with its two previous orders "instanter." Additionally, the title of the order stated, in all capital letters, that it was Nottingham's "last opportunity to comply with court order," and the court explicitly warned Nottingham in the body of the order that "a failure to comply may lead to the imposition of sanctions including the assessment of a monetary sanction and, ultimately, dismissal of this lawsuit."

Steadfast in his desire to proceed without completing the questionnaire, Nottingham filed instead a "response" to the court's order expressing confusion as to the financial disclosure obligation. Attached to the response was an affidavit from Nottingham's wife, Nancy Morrison Nottingham, explaining that the Nottinghams' financial circumstances had improved between the time of the original IFP application and the paying of the filing fee. According to the affidavit, medical problems had restricted Nancy's ability to work in mid-2014, but surgery had alleviated the issue to the point that the Nottinghams were no longer in need of IFP assistance by the end of 2014.

In response, the district court dismissed the complaint without prejudice. In dismissing the case pursuant to Federal Rule of Civil Procedure 41(b), DISTRICT JUDGE ROBINSON noted that Nottingham "has made plain [that] he will not comply" with the previous orders to complete the questionnaire and that he was warned of the potential consequences for noncompliance.

The day after the dismissal, Nottingham filed a motion for reconsideration. In the motion, Nottingham did not offer to cure his error by filing a completed questionnaire. Instead, he argued that he had gone "far and above" in his efforts to comply with the court's order and "followed each and every order that was issued," asserting that MAGISTRATE JUDGE AVERITTE had no basis for continuing to require Nottingham to comply with the financial disclosure obligation after he paid the filing fee. The district court denied the motion for reconsideration, and Nottingham timely appealed.

3

No. 15-10163

## II

Under Rule 41(b), a district court may dismiss an action sua sponte if the plaintiff fails to comply with court orders.[1]  We review such dismissals for abuse of discretion.[2]  Where, as here, "the dismissal is without prejudice but the applicable statute of limitations probably bars future litigation," our examination is searching, and we review the dismissal as we would a dismissal with prejudice.[3]  Although "[l]esser sanctions such as fines or dismissal without prejudice are usually appropriate before dismissing with prejudice, . . . a Rule 41(b) dismissal is appropriate where there is 'a clear record of delay or contumacious conduct by the plaintiff and when lesser sanctions would not serve the best interests of justice.'"[4]

Read liberally, Nottingham's brief argues that MAGISTRATE JUDGE AVERITTE lacked the authority to require him to complete the questionnaire after he paid the filing fee, excusing his refusal to comply with the court's orders.  MAGISTRATE JUDGE AVERITTE required Nottingham's continued compliance with the financial disclosures order to ensure that the "initial request for pauper status was proper," in light of Nottingham's apparent pattern of filing IFP applications and then paying the filing fee when additional and verifiable detail was requested.  Although we have never addressed the propriety of a district court ordering financial disclosures after

---

[1] *See* FED R. CIV. P. 41(b); *McCullough v. Lynaugh*, 835 F.3d 1126, 1126 (5th Cir. 1988) (per curiam).

[2] *Coleman v. Sweetin*, 745 F.3d 756, 766 (5th Cir. 2014) (per curiam).

[3] *Id.* (quoting *Boazman v. Econ. Lab., Inc.*, 537 F.2d 210, 213 (5th Cir. 1976)).

[4] *Bryson v. United States*, 553 F.3d 402, 403 (5th Cir. 2008) (per curiam) (citations omitted) (quoting *Callip v. Harris Cty. Child Welfare Dep't*, 757 F.2d 1513, 1521 (5th Cir. 1985)); s*ee also Long v. Simmons*, 77 F.3d 878, 880 (5th Cir. 1996) (noting that a district court does not abuse its discretion by dismissing a case with prejudice if the plaintiff has been contumacious and the court has "employed lesser sanctions before dismissing the action").

a plaintiff withdraws his or her IFP application in favor of paying the filing fee, we conclude that the district court has that authority.

The statute governing IFP status specifies that "[n]otwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if [it] determines that . . . the allegation of poverty is untrue."[5]   Accordingly, inquiry into whether Nottingham's allegations of poverty were true was well within the district court's discretion.  Dismissal is mandatory if the court determines "at any time,"[6] even after the plaintiff pays the filing fee,[7] that the contents of an IFP application are false. A district court retains the authority to conduct reasonable investigations into the allegation of poverty even *after* the filing fee payment.  Under the statute's plain language, Nottingham's eventual payment did not disrupt the district court's ability to inquire into whether the initial IFP application contained misrepresentations.

We reject Nottingham's argument that his noncompliance can be excused on the ground that the district court lacked the authority to require him to complete the questionnaire after he paid the filing fee.  The question remains, however, whether the district court abused its discretion by imposing the ultimate sanction for Nottingham's refusal to comply with court orders.

The district court had reason to suspect that Nottingham's IFP application contained false information, as this is apparently the third time that Nottingham has filed an IFP application, then withdrawn the application

---

[5] 28 U.S.C. § 1915(e)(2)(A).

[6] 28 U.S.C. § 1915(e)(2).

[7] *See Mathis v. New York Life Ins. Co.*, 133 F.3d 546, 547 (7th Cir. 1998) (per curiam) ("The Prison Litigation Reform Act (PLRA) redesignated § 1915(d) to § 1915(e) and mandated that a district court '*shall* dismiss the case' if among other things 'the allegation of poverty is untrue.'").  We also find our decision in *Castillo v. Blanco*, 330 F. App'x 463, 466 (5th Cir. 2009) (per curiam) (unpublished) (noting mandatory dismissal requirement) persuasive.

after being pressed for additional information.  While Nottingham argues on appeal that he has never previously filed for IFP status, the docket sheets in the two previous cases cited by MAGISTRATE JUDGE AVERITTE reflect IFP requests followed by payment of the filing fee,[8] so even if those docket sheets reflect some clerical error or Nottingham filed for IFP relief in those cases only by mistake, MAGISTRATE JUDGE AVERITTE had an objective basis for suspecting that Nottingham may have made untrue allegations of poverty and was permitted to inquire about the issue.

As noted above, dismissal was proper only if Nottingham's noncompliance was the result of "purposeful delay or contumaciousness and . . . lesser sanctions would not serve the best interests of justice."[9] Additionally, to dismiss with prejudice, we usually require the presence of an "aggravating factor," which includes "the extent to which the plaintiff, as distinguished from his counsel, was personally responsible for the delay, the degree of actual prejudice to the defendant, and whether the delay was the result of intentional conduct."[10]

Nottingham's conduct demonstrates contumaciousness.  After the district court twice made clear that it required Nottingham's compliance with its original order notwithstanding his payment of the filing fee, Nottingham expressed confusion at the directive and noted that he "cannot find any requirement to file any financial statement if he has not asked for any financial

---

[8] *Compare* Order Setting Deadline for Submission of IFP Data Sheet, *Nottingham v. Richardson*, No. 2:10-CV-60 (N.D. Tex. July 2, 2010), ECF No. 13 *with* Receipt for $350, *Nottingham v. Richardson*, No. 2:10-CV-60 (N.D. Tex. July 12, 2010); *compare* Notice of Deficiency, *Nottingham v. Finsterwald*, No. 2:10-CV-23 (N.D. Tex. Feb. 19, 2010), ECF No. 8 *with* Receipt of payment for Filing Fee, *Nottingham v. Finsterwald*, No. 2:10 CV-23 (N.D. Tex. Mar. 9, 2010).

[9] *Bryson*, 553 F.3d at 403 (quoting *Callip*, 757 F.2d at 1521).

[10] *Id.* (quoting *Rogers v. Kroger Co.*, 669 F.2d 317, 320 (5th Cir. 1982)).

assistance."  But the requirement to provide financial information was clearly set forth in two of MAGISTRATE JUDGE AVERITTE'S orders.  A litigant may not flout valid court orders simply because he is not independently certain of their validity.[11]

With respect to lesser sanctions, we have previously made clear that they "include assessments of fines, costs, or damages against the plaintiff, conditional dismissal, dismissal without prejudice, and explicit warnings."[12] Here, MAGISTRATE JUDGE AVERITTE explicitly warned Nottingham that his continued refusal to complete the questionnaire provided "may lead to the imposition of sanctions including the assessment of a monetary sanction and, ultimately, dismissal of this lawsuit."  Despite this explicit warning, Nottingham refused to comply.

Finally, Nottingham is acting pro se and is personally responsible for his failure to comply with the district court's orders.  Additionally, Nottingham's noncompliance was due to intentional conduct, as he acknowledged understanding MAGISTRATE JUDGE AVERITTE'S order.  In response to the order that included in its caption "LAST OPPORTUNITY TO COMPLY WITH COURT ORDER," Nottingham stated that he "requests that he be able to proceed without providing any additional financial disclosure, without the threat of dismissal or sanctions."  Even after the district court dismissed the suit, Nottingham's motion for reconsideration did not provide the financial information that he had been ordered to disclose.  Instead, he again challenged

---

[11] *See* FED. R. CIV. P. 41(b) (authorizing dismissal as sanction for failing to comply with court order); *cf. McNeal v. Papasan*, 842 F.2d 787, 792 (5th Cir. 1988) (focusing contumaciousness inquiry in a dismissal for failure to prosecute on the "stubborn resistance to authority" (internal quotation marks and citation omitted)).

[12] *Thrasher v. City of Amarillo*, 709 F.3d 509, 514 (5th Cir. 2013) (alterations and internal quotation marks omitted).

No. 15-10163

the court's authority to require financial disclosures once he had paid the filing fee.  Accordingly, "aggravating factors" are present.

The district court did not abuse its discretion in dismissing this action pursuant to Rule 41(b).

\*        \*        \*

For the reasons set forth herein, the judgment of the district court is AFFIRMED.

No. 15-10163

HAYNES, Circuit Judge, dissenting:

I respectfully dissent. I agree with the majority opinion that the better view of the law is that the magistrate judge had the authority to investigate the truthfulness of the original poverty allegations even after the pro se plaintiff withdrew his IFP application. However, the Seventh Circuit's decision regarding a related question in *Hrobowski v. Commonwealth Edison Co.*, 203 F.3d 445 (7th Cir. 2000) demonstrates that this is far from an obvious legal proposition to a group of judges, much less to a pro se litigant.

In *Hrobowski*, the district court initially granted a plaintiff's application to proceed IFP in his discrimination suit and appointed counsel to represent the plaintiff pro bono. *Id.* at 446. Subsequently, the plaintiff hired and paid for a new attorney when his appointed counsel sought and was granted leave to withdraw (to which the plaintiff did not object). *Id.* Later in the course of the litigation, the plaintiff filed a *second* application to proceed IFP and again sought appointment of counsel. *Id.* at 447. The district court denied the plaintiff's second application and the case proceeded to trial. *Id.* On the second day of trial, it came to light during cross examination of the plaintiff that his second application for IFP status contained significant omissions. *Id.* In light of this testimony and upon the defendant's motion, the district court dismissed the plaintiff's case as a sanction pursuant to 28 U.S.C. § 1915(e)(2)(A). *Id.*

The Seventh Circuit reversed. *Id.* at 449. Concluding first that the question presented—"whether [§ 1915(e)(2)(A)] forced the district court to dismiss . . . [the plaintiff's] case after the omissions in his *in forma pauperis* applications came to light"—was a question of law, the court reviewed the district court's decision *de novo*. *Id.* at 448. The court went on to determine that the denial of the plaintiff's second IFP application operated "as a revocation of the initial grant of [IFP] status," and thus "his obligation to pay

9

filing fees kicked in and he began to proceed (or at least should have been ordered to proceed) like any other plaintiff." *Id.* Over the subsequent 11 months, "he expended considerable money and effort . . . bringing his case to trial," in accordance with his non-IFP status. *Id.* The court concluded that the district court's dismissal of the case under the code provision entitled "'proceedings in forma pauperis' after such a long stretch of [the plaintiff] proceeding as a nonpauper d[id] not make sense." *Id.* Thus, the court held that the district court erred in using the mandatory dismissal language of § 1915(e)(2)(A) to dismiss the plaintiff's suit. *Id.*

*Hrobowski* does not directly address the question raised by this appeal—whether the district court has the discretion to develop evidence relevant to § 1915(e)(2)(A) when an IFP application is no longer pending. Rather, it addressed a related question—whether a judge has the power to *dismiss* a case under § 1915(e)(2)(A)'s mandatory dismissal provision when a plaintiff is no longer proceeding IFP (and has not been for some time). Further, unlike the district court in *Hrobowski*, the district court in this case dismissed Nottingham's appeal under Federal Rule of Civil Procedure 41(b)—not § 1915(e)(2)(A).

Nonetheless, *Hrobowski*'s holding could be read to call into question a magistrate judge's power to continue to investigate a plaintiff's IFP status even after an IFP application has been withdrawn. Given the uncertainty exhibited by the arguable dissonance between the Seventh Circuit's holding in *Hrobowski* and the majority opinion in this case, it is understandable that Nottingham, a pro se litigant, would not necessarily intuit that the magistrate judge could continue to require the submission of financial disclosures even after the withdrawal of his IFP application. Accordingly, I conclude that Nottingham's conduct did not evince the "purposeful delay or contumaciousness" necessary for what is effectively a dismissal with prejudice.

*Long v. Simmons*, 77 F.3d 878, 880 (5th Cir. 1996). A plaintiff should not be punished to the point of losing his case for disputing a legal proposition which is not obvious. *Id.*

Additionally, I disagree that Nottingham was clearly warned of the possibility of immediate dismissal.  As the majority opinion shows, the magistrate judge stated only that "a failure to comply may lead to the imposition of sanctions including the assessment of a monetary sanction and, *ultimately*, dismissal of this lawsuit." Maj. Op. at 3 (emphasis added).  The dismissal was not "ultimately"; it took place immediately.

For these reasons, I dissent.  Now that we have made the law clear, instead of affirming, I would give Nottingham another chance by remanding the case with directions that the district court allow him one more opportunity to respond to the magistrate judge's order in question within a stated (reasonable) time.  If he then fails to comply, his case should be dismissed.

11