# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

June 5, 2023

Lyle W. Cayce
Clerk

―――――――――

No. 22-60098

―――――――――

THADDEUS L. JARVIS,

*Plaintiff—Appellant*,

*versus*

PELICIA HALL, *Mississippi Department of Corrections Commissioner*, *in her official capacity* ; TOMMY TAYLOR, *Interim Commissioner*, *in his official capacity*; UNKNOWN TURNER, *M.S.P. Superintendent*, *in his official capacity*; UNKNOWN MORRIS, *M.S.P. Warden, Camp 29*, *in his individual and official capacity*; UNKNOWN SIMON, *Warden, Camp 29*, *in individual and official capacity*; UNKNOWN MUFORD, *Captain, Camp 29*, *in individual and official capacity*; UNKNOWN CANNON, *Correctional Officer*, *in individual and official capacity*; UNKNOWN MEEKS, *Captain Camp 29*,*in individual and official capacity*,

*Defendants—Appellees*.

―――――――――――――――――――――――――

Appeal from the United States District Court
for the Northern District of Mississippi
USDC No. 4:20-CV-193

―――――――――――――――――――――――――

Before JONES, CLEMENT, and HAYNES, *Circuit Judges*.

PER CURIAM:[*]

―――――――――――――――――――

[*] This opinion is not designated for publication. *See* 5TH CIR. R. 47.5.

No. 22-60098

Thaddeus L. Jarvis, a Mississippi prisoner proceeding pro se and in forma pauperis, sued several prison officials under 42 U.S.C. § 1983, alleging violations of his constitutional rights. The district court sua sponte dismissed three of Jarvis's claims and later granted summary judgment on the remaining two. For the reasons set forth below, we AFFIRM.

## I.    Factual Background

Jarvis is an inmate at the Mississippi State Penitentiary ("M.S.P."). In January 2020, a violent dispute broke out in the prison between rival gangs, resulting in the death of multiple inmates. To regain control of the penitentiary, prison officials temporarily transferred Jarvis and other inmates to another section of the facility, "Unit 32." The inmates remained in Unit 32 for the next seven days. Jarvis alleges that, during this period, prison officials denied him food, water, clothing, bedding, and personal hygiene items, including properly functioning toilets. In particular, he asserts that they failed to provide him with meals containing at least 2,900 calories and that they did not permit him to shower. He also pleads that he was not allowed to bring his personal belongings with him to Unit 32.

Jarvis contends that, at some point during this time, an emergency response team of over "fifty cars" of Mississippi State Troopers arrived at the prison to help regain control of M.S.P. Although his allegations on this point are not abundantly clear, he seems to aver that one officer used excessive force against him. Per Jarvis, the officer slammed him to the ground while his hands were restrained, bruising his back and chipping his tooth. He alleges that he subsequently requested—but was denied—medical treatment for four days.

2

No. 22-60098

Based on these events, Jarvis filed this § 1983 suit against various prison officials[1] (collectively, "Defendants"). His complaint avers that Defendants violated his constitutional rights by: (1) failing to protect him from the threat of gang violence; (2) subjecting him to unconstitutional conditions of confinement; (3) using excessive force against him; (4) denying him medical treatment; and (5) depriving him of his personal property without due process.

The district court scheduled a *Spears*[2] hearing on Jarvis's claims, but later cancelled the hearing without explanation. Though the district court's order does not say so explicitly, it appears the court reviewed Jarvis's complaint under the screening provisions of 28 U.S.C. §§ 1915(e)(2) and 1915A. In doing so, it sua sponte dismissed Jarvis's claims for failure to protect, denial of medical treatment, and deprivation of property without due process. However, it permitted Jarvis's remaining claims to proceed.

Defendants subsequently moved for summary judgment. They urged that the official-capacity claims were barred by sovereign immunity, and they were entitled to qualified immunity on the individual-capacity claims. In support, they attached to the motion a copy of Jarvis's administrative grievances. Many of the statements contained in the administrative grievances directly contradicted the allegations in Jarvis's complaint. Jarvis responded to the motion but did not submit any evidence in support. The

---

[1] His complaint names: the Commissioner of the Mississippi Department of Corrections, the Interim Commissioner of the Mississippi Department of Corrections, the M.S.P. Superintendent, an M.S.P. Warden, two M.S.P. Captains, and an M.S.P. Correctional Officer. He sues all Defendants in their official capacities, and the Warden, Captains, and Correctional Officer in their individual capacities.

[2] Spears v. McCotter, 766 F.2d 179, 181–82 (5th Cir. 1985), overruled on other grounds by Neitzke v. Williams, 490 U.S. 319 (1989).

No. 22-60098

district court subsequently granted summary judgment, dismissing the remaining claims. Jarvis timely appealed.

## II.    Jurisdiction & Discussion

The district court had jurisdiction under 28 U.S.C. § 1331, and we have appellate jurisdiction under 28 U.S.C. § 1291. We address the district court's sua sponte dismissal and summary judgment, in turn, below.

### A. Sua Sponte Dismissal

The district court first screened and dismissed Jarvis's claims for failure to protect, denial of medical treatment, and deprivation of property without due process. Where, as here, a prisoner is proceeding in forma pauperis, §§ 1915(e) and 1915A require a court to dismiss an action or claim against a governmental entity or officer or employee of a governmental entity that is frivolous, malicious, or fails to state a claim upon which relief may be granted. We review a district court's dismissal under these provisions de novo. *Legate v. Livingston*, 822 F.3d 207, 209 (5th Cir. 2016).

To determine whether a complaint fails to state a claim in this context, we apply the same standard we use to review dismissals under Rule 12(b)(6). *Id.* at 209–10. Accordingly, the "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted). Alternatively, "[a] claim may be dismissed as frivolous if it does not have an arguable basis in fact or law." *Brewster v. Dretke*, 587 F.3d 764, 767 (5th Cir. 2009) (per curiam). It lacks an arguable basis in fact or law if it is predicated "on an indisputably meritless legal theory." *Samford v. Dretke*, 562 F.3d 674, 678 (5th Cir. 2009) (per curiam) (quotation omitted).

Generally, a district court must offer a pro se plaintiff an opportunity to remedy perceived errors in his complaint before it dismisses those claims

4

No. 22-60098

with prejudice.[3] *See Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1998) (per curiam); *Eason v. Thaler*, 14 F.3d 8, 9 (5th Cir. 1994). But a district court need not afford such an opportunity (1) if the plaintiff's claims are clearly frivolous, *see Eason*, 14 F.3d at 9, or (2) if the plaintiff "has already pleaded his best case," *Mendoza-Tarango v. Flores*, 982 F.3d 395, 402 (5th Cir. 2020) (quotation omitted).

Here, Jarvis does not dispute the district court's determination that he failed to state a claim for failure to protect, denial of medical treatment, or deprivation of property. Rather, his sole argument on appeal is that the district court erred in dismissing his claims without a *Spears* hearing. The problem with this argument is that Jarvis's appellate brief fails to identify how his "insufficient factual allegations" could "be remedied by more specific pleading." *Eason*, 14 F.3d at 9.

Jarvis does not, for instance, explain what additional details a *Spears* hearing would have revealed, nor does he "state any material facts he would have included in an amended complaint" if afforded the opportunity. *Brewster*, 587 F.3d at 768; *see also Scott v. U.S. Bank Nat'l Ass'n*, 16 F.4th 1204, 1209 (5th Cir. 2021) (per curiam) (noting that movants must provide "some notice of what his or her amendments would be and how those amendments would cure the initial complaint's defects" to be entitled to leave to amend). He simply maintains that his claims "[a]re supported by the complaint" and rests on the allegations contained within. We liberally construe pro se briefs, *Mapes v. Bishop*, 541 F.3d 582, 584 (5th Cir. 2008) (per curiam), but—even so—we conclude Jarvis has failed to brief any argument establishing his entitlement to a *Spears* hearing. This failure constitutes

_____

[3] A district court typically offers this opportunity through a "questionnaire or in a *Spears* dialog." *Eason v. Thaler*, 14 F.3d 8, 9 (5th Cir. 1994).

abandonment on appeal. *See Yohey v. Collins*, 985 F.2d 222, 224–25 (5th Cir. 1993); *see also Davis v. Scott*, 157 F.3d 1003, 1006 (5th Cir. 1998) ("[T]he plaintiff remains the master of his complaint and is, in the end, the person responsible for articulating the facts that give rise to a cognizable claim.").

Because Jarvis does not address whether or how he failed to plead his best case before the district court, *Mendoza-Tarango*, 982 F.3d at 402, we conclude the district court did not err by failing to hold a *Spears* hearing and sua sponte dismissing Jarvis's claims.

### B. Summary Judgment

We next consider the district court's summary judgment on Jarvis's claims for unconstitutional conditions of confinement and excessive force. As an initial matter, Defendants moved for summary judgment on Jarvis's official-capacity claims, asserting that they were barred by sovereign immunity. Jarvis does not contest that on appeal, so we deem the issue waived.[4] *See Hughes v. Johnson*, 191 F.3d 607, 613 (5th Cir. 1999); *Yohey*, 985 F.2d at 224–25; *Brinkmann v. Dall. Cnty. Deputy Sheriff Abner*, 813 F.2d 744, 748 (5th Cir. 1987). Defendants next moved for summary judgment on Jarvis's individual-capacity claims, asserting that they were entitled to qualified immunity.[5]

---

[4] To the extent that Jarvis claims on appeal that Defendants are liable on a supervisory liability theory, Jarvis's pleadings do not make such an allegation. We generally do not consider arguments raised for the first time on appeal. *See Leverette v. Louisville Ladder Co.*, 183 F.3d 339, 342 (5th Cir. 1999) (per curiam). Accordingly, we decline to address that argument here.

[5] We observe that the district court did not make its reasons for granting summary judgment abundantly clear, and as a result, it did not explicitly conclude that Defendants were entitled to qualified immunity. Nevertheless, Defendants moved for summary judgment on that basis, and we may affirm on any grounds supported by the record. *Doctor's Hosp. of Jefferson, Inc. v. Se. Med. All., Inc.*, 123 F.3d 301, 307 (5th Cir. 1997).

We review "a district court's grant of summary judgment de novo, applying the same standards as the trial court." *Griffin v. UPS, Inc.*, 661 F.3d 216, 221 (5th Cir. 2011). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). However, a good-faith assertion of qualified immunity "alters the usual summary judgment burden of proof." *Trent v. Wade*, 776 F.3d 368, 376 (5th Cir. 2015) (quotation omitted). Once a defendant raises qualified immunity, the burden shifts to the plaintiff to raise a genuine issue of material fact as to whether the alleged conduct violated a clearly established right. *Id.*; *Cole v. Carson*, 935 F.3d 444, 451 (5th Cir. 2019) (en banc).

With this framework in mind, we address whether Defendants are entitled to qualified immunity on Jarvis's claims for unconstitutional conditions of confinement and excessive force.

## 1.  Conditions of Confinement

First, Jarvis contends that the conditions during his seven days of confinement in Unit 32 were so inadequate that they violated his Eighth Amendment rights.  The Eighth Amendment "does not mandate comfortable prisons, but neither does it permit inhumane ones." *Hinojosa v. Livingston*, 807 F.3d 657, 665 (5th Cir. 2015) (quotation omitted). Accordingly, to establish his conditions-of-confinement claim, Jarvis must satisfy two prongs.  First, he must show that his confinement resulted in an "objectively, sufficiently serious" deprivation that "constitutes a 'denial of the minimal civilized measures of life's necessities.'" *Coleman v. Sweetin*, 745 F.3d 756, 764 (5th Cir. 2014) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).  Second, Jarvis must demonstrate that Defendants acted with deliberate indifference to his health and safety. *Farmer*, 511 U.S. at 834.

We need not reach the second prong because Jarvis cannot satisfy the first.[6] Jarvis argues that Defendants deprived him of five main needs: food, water, clothing, bedding, and personal hygiene items (including showers and functioning plumbing). But, as we explain below, Jarvis failed to submit summary judgment evidence demonstrating that any of these deprivations were sufficiently serious to create a constitutional violation. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (noting that "extreme deprivations are required to make out a conditions-of-confinement claim.").

Jarvis's most extreme claims are that prison officials denied him water and food. But according to the administrative grievances he filed following these events, he *did* receive both. As to the former, Jarvis admitted that he received many bottles of water during the seven-day period, and, as to the latter, he similarly conceded that he was provided meals—just not the 2,900 calories a day in three meals like he usually received. But even that interruption was temporary. Prison officials provided inmates one meal the day after the riot and two meals the next day. Within three days, they had resumed the regularly scheduled routine. On these facts, we conclude that Jarvis did not suffer a deprivation of the "minimal civilized measure of life's necessities." *Talib v. Gilley*, 138 F.3d 211, 214 n.3 (5th Cir. 1998) (quotation omitted); *see also Palmer v. Johnson*, 193 F.3d 346, 352 (5th Cir. 1999) (recognizing that missing one meal "does not rise to the level of a cognizable

_____

[6] However, even assuming arguendo Jarvis could establish he suffered a severe deprivation, his claim would still fail at the second prong. To establish that Defendants acted with deliberate indifference to inmate health or safety, Jarvis needed to demonstrate that they were "aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed]" and they actually "dr[e]w the inference" to that effect. *Farmer*, 511 U.S. at 837. But deliberate indifference "is an extremely high standard to meet," *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (quotation omitted), and Jarvis has simply failed to raise a genuine fact issue as to the prison official's subjective intent. Therefore, his Eighth Amendment claim fails on this basis, too.

constitutional injury"); *Green v. Ferrell*, 801 F.2d 765, 770–71 (5th Cir. 1986) (concluding that the provision of only two, as opposed to three, nutritionally adequate meals daily does not violate the Eighth Amendment).

Jarvis's remaining claims regarding the deprivation of clothing, bedding, and personal hygiene items fare no better. In assessing these alleged deprivations, we consider both their duration and their severity. *See Taylor v. Riojas*, 141 S. Ct. 52, 54 n.2 (2020); *Talib*, 138 F.3d at 214 n.3 (considering deprivations in context of duration); *Hutto v. Finney*, 437 U.S. 678, 686–87 (1978) (observing that "the length of confinement cannot be ignored"; indeed "[a] filthy, overcrowded cell . . . might be tolerable for a few days and intolerably cruel for weeks or months.").

As to duration, none of the deprivations Jarvis complains of lasted more than a week. According to Jarvis's administrative grievances, he received proper bedding within three days, toiletries within four days, and access to showers and properly functioning plumbing within seven days. What's more, nothing in the record suggests that prison officials subjected inmates to these conditions longer than needed to restore order in the main penitentiary; this was an emergency situation and not one where Jarvis was being penalized or the like. This is particularly important. As instructed by the Supreme Court, we will not second-guess prison officials' decisions— even "restrictive and [] harsh" ones, *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981),—that are "reasonably related to legitimate penological interests," *Turner v. Safley*, 482 U.S. 78, 89 (1987). As to severity, none of these temporary deprivations rose to the level of extreme, inhumane conditions, particularly in light of their short duration. *See Novak v. Beto*, 453 F.2d 661, 665–66, 69 (5th Cir. 1971) (short-term solitary confinement without full bedding not severe); *Hamilton v. Lyons*, 74 F.3d 99, 106 n.8 (5th Cir. 1996) (short-term lack of showers and sheets not severe); *Davis*, 157 F.3d at 1006

(same as to unsanitary cell); *Wilson v. Lynaugh*, 878 F.2d 846, 849 & n.5 (5th Cir. 1989) (similar).

Because Jarvis has failed to establish that the conditions of confinement violated the Constitution, we conclude that Defendants are entitled to qualified immunity and summary judgment on this claim.

### 2. Excessive Force

Jarvis next contends that the emergency response team used excessive force against him. To determine whether Jarvis has established a claim in this context, we ask whether the Defendants used force "in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Byrd v. Harrell*, 48 F.4th 343, 347 (5th Cir. 2022) (quoting *Hudson*, 503 U.S. at 7). In answering this question, we assess the Defendants' subjective intent by considering the well-known *Hudson* factors: (1) "the extent of the injury suffered" by the plaintiff; (2) the need for force; (3) the relationship between the force needed and the amount of force ultimately employed; (4) the threat reasonably perceived by prison officials; and (5) "any efforts made to temper the severity of a forceful response." *Byrd*, 48 F.4th at 347 (quotation omitted).

Jarvis alleges one incident of excessive force. His pleadings and the limited summary judgment evidence provide little context, but viewing the facts in the light most favorable to Jarvis, we discern the following events: At some point after the riot, "more than fifty cars" of Mississippi State Troopers and Mississippi Special Response Team officers arrived at M.S.P. Once there, the officers bound all inmates' hands behind their backs "using physical force." An unidentified officer then slammed Jarvis into the ground, bruising his back and chipping his tooth.

We need not address whether the use of force as Jarvis describes violates the Eighth Amendment. Even assuming arguendo Jarvis could

No. 22-60098

establish the officers violated a constitutional right, he has failed to demonstrate that "right was clearly established." *Cunningham v. Castloo*, 983 F.3d 185, 190–91 (5th Cir. 2020) (internal quotation marks and citation omitted); *see also Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (observing that we may resolve the case on a single prong). To satisfy the clearly established prong in a situation that is not obvious, Jarvis must cite to caselaw that provides officials with "reasonable warning that the conduct then at issue violated [his] constitutional rights." *Bush v. Strain*, 513 F.3d 492, 501–02 (5th Cir. 2008) (quotation omitted). But Jarvis has simply failed to do so here. He does not cite to any authority establishing that the use of force in this context violates the Eighth Amendment. Given the facts here, in the absence of any precedent, Defendants are entitled to qualified immunity and summary judgment on this claim.[7]

## III.    Conclusion

For the reasons discussed above, we AFFIRM.

---

[7] Finally, we note that Jarvis asks us to assign this case to a different district judge. Because we are affirming, this request is moot.