[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-10550

_____

JEREMY JOHN WELLS,

Plaintiff-Appellant,

*versus*

WARDEN,
CLIFFORD BROWN,
Unit Manager,
FNU FLUKER,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Georgia

D.C. Docket No. 1:20-cv-00097-JRH-BKE

————————————————

Before WILLIAM PRYOR, Chief Judge, WILSON, JORDAN, ROSENBAUM, JILL PRYOR, NEWSOM, BRANCH, GRANT, LUCK, LAGOA, and BRASHER, Circuit Judges.

JILL PRYOR and LUCK, Circuit Judges, delivered the opinion of the Court, in which WILLIAM PRYOR, Chief Judge, WILSON, ROSENBAUM, NEWSOM, BRANCH, GRANT, LAGOA, and BRASHER, Circuit Judges, joined.

JORDAN, Circuit Judge, filed an opinion concurring in the judgment.

ROSENBAUM, Circuit Judge, filed a concurring opinion, in which WILLIAM PRYOR, Chief Judge, and JILL PRYOR, Circuit Judge, joined.

JILL PRYOR and LUCK, Circuit Judges:

A federal litigant who is unable to pay court fees may proceed in forma pauperis. That means the litigant may file a case without prepaying fees or paying certain expenses. *See* 28 U.S.C. § 1915. But Congress has placed a limit on this privilege for prisoners. The Prison Litigation Reform Act—with one exception not applicable here—bars a prisoner from proceeding in forma pauperis if he "has, on [three] or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it [was] frivolous, malicious, or fail[ed] to state a claim upon which

relief may be granted." *Id.* § 1915(g).  This is called the three-strikes rule.

This appeal raises two issues about the three-strikes rule. First, is a dismissal for failure to exhaust administrative remedies a "strike" for purposes of the Act's three-strikes rule?  We hold that a dismissal for failure to exhaust can amount to a dismissal for failure to state a claim—an enumerated ground for a strike—but only if the failure to exhaust appears on the face of the prisoner's complaint.  That's because the failure to exhaust is an affirmative defense.  And a complaint may be subject to dismissal for failure to state a claim—based on an affirmative defense—only when the affirmative defense appears on the face of the complaint.

Second, does the prisoner in this case—Jeremy Wells—have three strikes?  He doesn't.  Wells had three possible strikes:  one dismissal for failure to state a claim, another dismissal for failure to exhaust administrative remedies, and a summary judgment for failure to exhaust.  Everyone agrees that the first dismissal is a strike because the dismissing court expressly said it was dismissing the action for failure to state a claim.  We agree with the district court that the second dismissal—for failure to exhaust—counted as a strike because the dismissing court gave some signal in its order that the action was dismissed as frivolous, malicious, or for failure to state a claim.  But we agree with Wells that the summary judgment for failure to exhaust was not a strike because it was not a dismissal for failure to state a claim.  Because Wells hasn't struck

out, we reverse the dismissal of Wells's complaint based on the three-strikes rule and remand for further proceedings.

## I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This case hinges on whether Wells has three strikes, so we walk through Wells's three prior actions before turning to this case.

### Wells v. Cook, 1:11-CV-324-RJC (W.D.N.C.)

In October 2011, Wells was a detainee in the Avery County Jail in North Carolina. In *Cook*, Wells alleged that, while he was being held in the jail, he "was not provided a written copy of [the] institution rules and regulations," he "was denied contact with family," he was "denied legal research," and he was "housed in [a twelve] man cell with [eighteen] inmates." Wells filed a 42 U.S.C. section 1983 prisoner civil rights complaint against the head jailer and the sheriff. In his complaint, Wells requested that the jail: "develop[] and implement a booking procedure" that included "a written copy of rules and regulations"; "provide[] legal resources including a law library"; "train[] and educate[]" the corrections officers about the inmates' "civil rights"; pay him five hundred dollars "a day for all days [he] was detained"; and cover "all legal expenses."

Because Wells sought "to proceed in forma pauperis," the district court screened his complaint under 28 U.S.C. section 1915(e)(2) "to determine whether it [was] subject to dismissal on the grounds that it [was] frivolous or malicious or fail[ed] to state a

claim on which relief may be granted." After reviewing the allegations, the district court found that Wells had "failed to state a cognizable legal claim in his [c]omplaint." Even assuming that the allegations in the complaint were true, the district court concluded that Wells had "simply not alleged a violation of his federal constitutional rights." So, the district court "sua sponte" dismissed Wells's complaint.

### *Wells v. Avery County Sheriff's Office*, 1:13-CV-55-RJC (W.D.N.C.)

Wells filed another section 1983 prisoner civil rights complaint stemming from the same October 2011 detention in the Avery County Jail. This time, Wells alleged that the sheriff's office violated his right of access to the courts by: denying his request for his attorney's address; placing the mail he sent to his attorney "in property for [nine] months with no notification of its exist[e]nce"; and failing to forward him his legal mail "while [he was] still in" the sheriff's "custody but housed in another location." Wells stated that he had not exhausted administrative remedies because he "was not made aware that [his] legal mail was being held until[] [he] was being released" from the jail. Wells alleged that, because of all this, he lost five thousand dollars "in bail forf[e]iture," "incur[red] additional felony charges," "incur[red] enhanced charges," and "suffered from [a] loss of freedom for an extended amount of time." Wells requested thirty thousand dollars in damages.

The district court did "an initial review of" Wells's complaint. "Pursuant to 28 U.S.C. [section] 1915(A)(a)," the district

court explained, it had to review "a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." That review required the district court to "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint—[was] frivolous, malicious, or fail[ed] to state a claim upon which relief may be granted."

In reviewing Wells's complaint, the district court found that Wells admitted that "he did not participate in any internal grievance procedures while housed at the Avery County Jail or following his transfer to a new custodian." While Wells appeared to argue "that notifying" the sheriff's office of his "claims would [have] serve[d] no useful purpose" because he didn't learn about the mail "until he had been released from" the jail "and placed in the custody of another jurisdiction," the district court found that "exhaustion remains mandatory even where the inmate claims that exhaustion would be futile." The district court dismissed Wells's complaint without prejudice.

### Wells v. Sterling, 6:15-CV-1344-MBS (D.S.C.)

By 2013, Wells was an inmate with the South Carolina Department of Corrections after pleading guilty to burglary, grand larceny, financial identity fraud, and forgery. Wells alleged that, while in the department's custody, a nurse "was taking blood from a large group of inmates." The nurse saw seven other inmates, and then it was Wells's turn to see the nurse. But the nurse was using the same gloves she used for the seven other inmates. Wells asked

the nurse to change her gloves.  She refused.  The nurse grabbed Wells's arm and stuck him, but she "was unable to get a good blood flow."  During the procedure, the nurse touched Wells's puncture site with the used gloves.

Wells also alleged that the department refused to credit him with fourteen months for the time he served in North Carolina. According to Wells, the credit-time-served error led him to serve four months more than he was supposed to serve.  The error also shorted him "the opportunity to go up for parole."

Wells sued the director of the state department of corrections, the wardens, the nurse who took his blood, and the head nurse, and brought two claims.  First, Wells alleged that the nurses were deliberately indifferent to his medical needs.  Second, he claimed that the director and the wardens violated his due process rights by refusing to fix the credit-time-served error in his sentence. Wells requested that the district court:  enter judgment against the defendants for violating his constitutional rights; order the department to change its policy about gloves "to meet [the] standards set forth by [the] Center [for] Disease Control"; require the department to pay his medical bills; and award him one dollar in compensatory damages and two-hundred-fifty thousand dollars in punitive damages.

The district court "reviewed [Wells's] complaint pursuant to the procedural provisions of 28 U.S.C. [section] 1915."  As to the medical glove claim, the district court found that Wells "simply has not been subjected to cruel and unusual punishment which could

form the basis of a cognizable [section] 1983 claim." So the "claim relating to the medical gloves [was] dismissed without prejudice." As to the credit-time-served claim, the district court found that Wells "appear[ed] to raise a claim of wrongful imprisonment." A section "1983 claim seeking damages for past confinement was permissible," the district court said, "to allow a habeas ineligible former prisoner to seek redress for the alleged denial of his freedom." So, "the court decline[d] to summarily dismiss" this claim under section 1915.

The remaining defendants—the director and the wardens—later moved for summary judgment on Wells's claim for wrongful imprisonment, arguing in part that Wells "failed to exhaust his administrative remedies" for that claim. While Wells had alleged in his complaint that he followed the department's "grievance procedure," the remaining defendants offered evidence that Wells "failed [to] file a . . . [g]rievance concerning his claims before he filed" the case. Specifically, the summary judgment motion attached a declaration from the state prison's inmate grievance administrator. In that declaration, the grievance administrator stated that, although Wells had filed a grievance about "the drawing of blood," there was no record of Wells filing a grievance "concerning the calculation of his sentence."

The district court granted summary judgment for the remaining defendants. The court found that Wells "failed to exhaust his administrative remedies because he did not file a timely grievance to start the grievance process." The district court found that

Wells was on notice that he had a miscalculation claim but "did not begin the informal resolution process within eight days or file his grievance within five days of being on notice that he had a grievance," as required by the department's grievance policy. The clerk of court entered a judgment reflecting the district court's order.

## This Case

Fast forward seven or so years to May 2020. By that point, Wells was an inmate at the Augusta State Medical Prison in Georgia. Wells filed a complaint about his time in the prison. Wells alleged that, on May 29, 2020, he told the prison's unit manager that "two gang members" were "extorting, selling drugs," and "beating inmates." Within the week, on June 5, 2020, Wells followed this up with a letter to the warden, reporting the gang activity. Nine days later, on June 14, 2020, Wells was "beaten" by the two gang members. As a result of the beating, Wells's "left ear drum was busted," he "had burns to both [of his] eyes," he had "a contusion to [his] right eye," he had an "abrasion to the inside back of [his] throat," and he had bumps and bruises on his "head, shoulders, and hands." After the beating, a corrections officer at the prison "started laughing" at Wells and (according to Wells) caused a sixteen-hour delay before he received medical treatment.

Wells sued the warden, the unit manager, and the corrections officer for violating his Eighth Amendment rights. As to the warden and the unit manager, Wells alleged that they were deliberately indifferent to a risk of serious harm because they were aware of the threat the two gang members posed to him but failed

to act. As to the corrections officer, Wells alleged that—by laughing at him and delaying medical attention—the corrections officer was deliberately indifferent to his serious medical need. For relief, Wells asked to be moved to a minimum-security prison, requested twenty-eight thousand dollars in compensatory damages, and sought five thousand dollars in punitive damages for his pain and suffering.

Because Wells sought to proceed in forma pauperis, the magistrate judge reviewed Wells's complaint under the Prison Litigation Reform Act's three-strikes rule. The magistrate judge explained that, under the three-strikes rule, the court was required to "evaluate whether the prisoner ha[d] [previously] brought three cases that were dismissed for failure to state a claim, or as frivolous or malicious." Having reviewed Wells's "history of filings," the magistrate judge found that Wells had "brought at least three cases that were dismissed and count[ed] as strikes." The magistrate judge relied on *Cook*'s dismissal at the pleadings stage for failure to state a claim, *Avery County*'s dismissal at the pleadings stage for failure to exhaust, and *Sterling*'s summary judgment for failure to exhaust. Based on its finding that Wells had "at least three strikes," the magistrate judge concluded that Wells could not proceed in forma pauperis under the Prison Litigation Reform Act. The magistrate judge recommended that Wells's motion to proceed in forma pauperis be denied.

Wells objected to the magistrate judge's recommendation. He argued that a prior case counts as a strike *only* when the action

was "dismissed on the grounds that it [was] frivolous, malicious, or fail[ed] to state a claim upon which relief may be granted." *See* 28 U.S.C. § 1915(g).  Wells contended that "the previous filings that the magistrate" judge counted as "strikes" did "not meet the standard of a 'strike' according to the language of the" Prison Litigation Reform Act.  Although Wells agreed that "one of [his] past filings"(the failure to state a claim in *Cook*) was a strike, he argued that other two (the failures to exhaust in *Avery County* and *Sterling*) were not dismissed as frivolous, malicious, or for failure to state a claim.

The district court overruled Wells's objection and adopted the magistrate judge's recommendation.  Like the magistrate judge, the district court concluded that Wells had three strikes: "one dismissal for failure to state a claim, another dismissal at the pleadings stage for failure to exhaust administrative remedies, and a third dismissal at summary judgment for failure to exhaust administrative remedies."  The district court concluded that the second and third dismissals counted as strikes because a dismissal for failure to exhaust administrative remedies counts as a strike and because a motion for summary judgment on the affirmative defense of failure to exhaust is the equivalent of a motion to dismiss.  Because Wells had three strikes, the district court denied his request to proceed in forma pauperis and dismissed the complaint without prejudice.

Wells appealed the district court's dismissal.  He argued that he didn't have three strikes under the Prison Litigation Reform Act

because the district court improperly counted as strikes both the *Avery County* dismissal for failure to exhaust administrative remedies and the *Sterling* summary judgment for failure to exhaust. "[A] dismissal for failure to exhaust administrative remedies, on its own," Wells contended, was "simply not an automatic strike," as the district court had found. Instead, Wells asserted, a dismissal for failure to exhaust "can only be a strike when the claim also happens to be frivolous, malicious, or a failure to state a claim."

A panel of this court affirmed the district court's three-strikes finding. In *White v. Lemma*, 947 F.3d 1373 (11th Cir. 2020), the panel explained, "we stated broadly that a prior case that was dismissed for failure to exhaust administrative remedies . . . counts as a [Prison Litigation Reform Act] strike under our precedent." "Despite [out-of-circuit] authority to the contrary, given *White*," the panel held, "we must conclude that dismissal for failure to exhaust qualifies as a strike under the" Act. Based on *White*, the panel could "find no error in the district court's conclusion that Wells had three . . . strikes and that his instant case was due to be dismissed." But the court granted rehearing en banc and vacated the panel opinion. *See Wells v. Warden*, 30 F.4th 1333 (11th Cir. 2022).

## II.    STANDARD OF REVIEW

We review de novo a district court's dismissal of a case under the Prison Litigation Reform Act's three-strikes rule. *Mitchell v. Nobles*, 873 F.3d 869, 873 (11th Cir. 2017).

### III.    DISCUSSION

We asked the parties to focus on two issues in their briefing and at oral argument:  (1) "Is a dismissal for failure to exhaust administrative remedies a 'strike' for purposes of the Prison Litigation Reform Act?"; and (2) "If a dismissal for failure to exhaust administrative remedies can be a 'strike' for purposes of the [Act]'s 'three strikes' provision, does Wells have three strikes?"  We'll focus our opinion on the same two issues.

*Is a Dismissal for Failure to Exhaust*
*Administrative Remedies a "Strike" for Purposes of the Act?*

The federal in forma pauperis statute "is designed to ensure that indigent litigants have meaningful access to the federal courts." *Neitzke v. Williams*, 490 U.S. 319, 324 (1989).  To that end, a litigant may commence an action in federal court "by filing in good faith an affidavit stating . . . that he is unable to pay the costs of the lawsuit." *Id.*  But "Congress recognized that a litigant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits." *Coleman v. Tollefson*, 575 U.S. 532, 535 (2015) (cleaned up).  This concern played out in practice:  the courts were flooded with "prisoner complaints challenging prison conditions or claiming civil rights violations." *Jones v. Bock*, 549 U.S. 199, 203 (2007).  "Most of these cases ha[d] no merit; many [were] frivolous." *Id.*

Congress responded with the Prison Litigation Reform Act. "To help staunch a 'flood of nonmeritorious' prisoner litigation, the Prison Litigation Reform Act . . . established what has become known as the three-strikes rule." *Lomax v. Ortiz-Marquez*, 140 S. Ct. 1721, 1723 (2020) (quoting *Jones*, 549 U.S. at 203). "That rule generally prevents a prisoner from bringing suit in forma pauperis . . . —that is, without first paying the filing fee—if he has had three or more prior suits 'dismissed on the grounds that [they were] frivolous, malicious, or fail[ed] to state a claim upon which relief may be granted.'" *Id.* (alteration in original) (cleaned up) (quoting 28 U.S.C. § 1915(g)). Specifically, the Act provides:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on [three] or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted . . . .

28 U.S.C. § 1915(g). By taking away the privilege of proceeding in forma pauperis from prisoners who have struck out, the rule is "designed to filter out the bad claims and facilitate consideration of the good." *Jones*, 549 U.S. at 204.

The first question we address is whether a dismissal for failure to exhaust administrative remedies counts as a strike. The Supreme Court, in *Jones*, answered this question for the Prison

21-10550                Opinion of the Court                15

Litigation Reform Act's similar "screening requirement[s]." *Id.* at 214–15. There are three of them: federal law provides for screening where the plaintiff proceeds "in forma pauperis," 28 U.S.C. § 1915(e)(2); where a prisoner "seeks redress from a governmental entity" or "employee," 28 U.S.C. § 1915A(a); and where a prisoner challenges "prison conditions" under federal law, 42 U.S.C. § 1997e(c)(1). Each of these screening provisions requires courts to dismiss a case where, upon screening the complaint, the court finds that (1) the case is frivolous, (2) the case is malicious, (3) the complaint fails to state a claim, or (4) the plaintiff seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. §§ 1915(e)(2)(B), 1915A(a)–(b); 42 U.S.C. § 1997e(c)(1).

In *Jones*, the Supreme Court considered whether a complaint must be dismissed for failure to exhaust under the screening provisions. *Jones*, 549 U.S. at 214–15. The Court pointed out that "failure to exhaust was notably not" one of the "four grounds" that would lead to the dismissal of a complaint. *Id.* at 214. But "[s]ome courts ha[d] found that exhaustion [was] subsumed under the [Act's] enumerated ground authorizing early dismissal for fail[ure] to state a claim upon which relief may be granted." *Id.* at 214–15 (quotation omitted). The Court rejected this approach, explaining that there was "no reason to suppose that the normal pleading rules" had been "altered to facilitate judicial screening of complaints specifically for failure to exhaust." *Id.* at 214.

Under normal pleading rules, the Court explained, "[a] complaint is subject to dismissal for failure to state a claim if the

allegations, taken as true, show the plaintiff is not entitled to relief." *Id.* at 215. For affirmative defenses, "failure to state a claim depends on whether the allegations in the complaint suffice to establish that ground." *Id.* And "failure to exhaust is an affirmative defense." *Id.* at 216. An exhaustion dismissal, the Court explained, was no different from a statute of limitations dismissal. "If the allegations, for example, show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim; that does not make the statute of limitations any less an affirmative defense." *Id.* at 215 (citing Fed. R. Civ. P. 8(c)).

In support, the Court cited the Third Circuit's decision in *Leveto v. Lapina*, 258 F.3d 156 (3d Cir. 2001), for the proposition that "a complaint may be subject to dismissal under [r]ule 12(b)(6) when an affirmative defense appears on its face." *Id.* at 161 (cleaned up). And the Supreme Court cited pages 708 to 710 and pages 721 to 729 of section 1357 of *Federal Practice and Procedure*. *Jones*, 549 U.S. at 215. There, the treatise explained that a complaint "is subject to dismissal under [r]ule 12(b)(6)" for failure to state a claim "when its allegations indicate the existence of an affirmative defense that will bar the award of any remedy." 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1357, at 708 (3d ed. 2004). "[B]ut," they continued, "for this to occur, the applicability of the defense has to be clearly indicated and must appear on the face of the pleading to be used as the basis for the motion." *Id.* at 708–10.

The treatise then lists a litany of affirmative defenses that have been considered on a motion to dismiss for failure to state a claim. "Other affirmative defenses that have been considered on a motion to dismiss under [r]ule 12(b)(6) include the plaintiff's assumption of the risk, the presence of contributory negligence, various types of estoppel, an assertion of illegality, a wide range of forms of legal immunity from suit, the equitable doctrine of laches, a claim of privilege, the plaintiff's execution of a release, the barring effect of res judicata and related preclusion principles, . . . and the applicability of the statute of frauds." *Id.* at 721–29 (footnotes omitted).

The Court treated exhaustion the same as those other affirmative defenses. Just as those affirmative defenses have been considered on a motion to dismiss for failure to state a claim, the Court rejected the notion "that failure to exhaust cannot be a basis for dismissal for failure to state a claim." *Jones*, 549 U.S. at 216. It can.[1] But, like any other affirmative defense, that doesn't mean

---

[1] The special concurrence says that we shouldn't put too much stock in *Jones*'s suggestion "that a dismissal for failure to exhaust administrative remedies can sometimes constitute a dismissal for failure to state a claim." But, where the Supreme Court addresses the same issue we address, as it did in *Jones*, we cannot so "lightly cast aside" the Court's discussion. *See Peterson v. BMI Refractories*, 124 F.3d 1386, 1392 n.4 (11th Cir. 1997). And, even if we could, there's no tension between *Jones* and *Bryant v. Rich*, 530 F.3d 1368 (11th Cir. 2008). *Bryant* simply suggested that, in the normal course, "exhaustion of administrative remedies is a matter in abatement and not *generally* an adjudication on the merits." 530 F.3d at 1374 (emphasis added). But it didn't say anything about whether a failure to exhaust can amount to a failure to state a

that plaintiffs are "required to specially plead or demonstrate exhaustion in their complaints." *Id.* They aren't. Instead, the question is whether the plaintiff's failure to exhaust appears on the face of the complaint. If it does, the plaintiff has failed to state a claim.[2]

In determining whether failure to exhaust can be a basis for dismissal for failure to state a claim, we see no reason to treat the Act's three-strikes rule any differently than the Supreme Court treated the Act's screening requirements in *Jones*. The three-strikes rule uses the same "fails to state a claim on which relief may be granted" language as the screening requirements, and we

---

claim under the three-strikes rule. To the contrary, *Bryant* was careful to explain that "[c]ases decided on the basis of no disputed facts about exhaustion are materially different . . . , presenting different questions for decision." *Id.* at 1376 n.15. *Jones* was discussing the materially different case where there were no disputed facts about exhaustion—the failure to exhaust was alleged on the face of the complaint. Finally, a three-strike rule dismissal for failure to state a claim does not need to be an adjudication on the merits, as the special concurrence suggests. The three-strikes rule, the Supreme Court held in *Lomax*, "covers all [failure-to-state-a-claim] dismissals: It applies to those issued both with and without prejudice to a plaintiff's ability to reassert his claim in a later action. A strike-call under [the three-strikes rule] thus hinges exclusively on the basis for the dismissal, regardless of the decision's prejudicial effect." 140 S. Ct. at 1724–25 (cleaned up).

[2] Of course, when we refer to the "face" of the complaint and the "allegations in the complaint," we mean "the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on [r]ule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007).

"generally presume that 'identical words used in different parts of the same act are intended to have the same meaning.'" *Fort Lauderdale Food Not Bombs v. City of Fort Lauderdale*, 11 F.4th 1266, 1278 (11th Cir. 2021) (quoting *United States v. Cleveland Indians Baseball Co.*, 532 U.S. 200, 213 (2001)).

Having carefully reviewed the three-strikes rule and the screening requirements, we see no contextual reason why the general presumption shouldn't apply here. We agree with our sister circuits that have read *Jones*'s discussion of the screening requirements to apply to the three-strikes rule. *See, e.g.*, *Ball v. Famiglio*, 726 F.3d 448, 459–60 (3d Cir. 2013), *abrogated on other grounds by Coleman*, 575 U.S. 532; *Thompson v. DEA*, 492 F.3d 428, 437–39 (D.C. Cir. 2007).

We recede from *Rivera v. Allin*, 144 F.3d 719 (11th Cir. 1998) and *White*, 947 F.3d 1373 to the extent we implied that a dismissal for failure to exhaust administrative remedies is always a dismissal for failure to state a claim. A dismissal for failure to exhaust administrative remedies is *not* always a dismissal for failure to state a claim.

### If a Dismissal for Failure to Exhaust Can Be a "Strike" Under the Three-Strikes Rule, Does Wells Have Three Strikes?

The district court concluded that Wells had "brought at least three cases that were dismissed and count[ed] as strikes"—"one dismissal for failure to state a claim" (*Cook*), "another dismissal at the pleadings stage for failure to exhaust administrative remedies"

(*Avery County*), and "a third dismissal at summary judgment for failure to exhaust administrative remedies" (*Sterling*). The second question we must address is whether these three cases were dismissed because they were frivolous, malicious, or failed to state a claim upon which relief may be granted.

We explained how we can tell that a dismissal was *frivolous* for purposes of the three-strikes rule in *Daker v. Commissioner, Georgia Department of Corrections*, 820 F.3d 1278 (11th Cir. 2016). Looking to section 1915's plain text, we observed that, under the three-strikes rule, we must look to whether an action or appeal "was dismissed on the grounds that it is frivolous." *Id.* at 1284 (quoting 28 U.S.C. § 1915(g)). "By using the phrase 'was dismissed' in the past tense and the phrase 'on the grounds that,' the Act instructs us to consult the *prior* order that dismissed the action or appeal and to identify the *reasons* that the court gave for dismissing it." *Id.* Because the Act instructs us to look at what the dismissing court *did*, we cannot find that an action was dismissed on the grounds that it was frivolous "unless the dismissing court made some express statement to that effect." *Id.*

"We cannot conclude," the court explained, "that an action or appeal 'was dismissed on the grounds that it is frivolous' based on our *present-day* determination that the action or appeal was frivolous or based on our conclusion that the dismissing court *could have* dismissed it as frivolous." *Id.* Instead, "[w]e must interpret the order of dismissal and figure out what the dismissing court actually did." *Id.* And "we cannot know whether the

dismissing court concluded that the higher standard for frivolousness was satisfied unless the court expressly says so." *Id.*

"Of course," the *Daker* court cautioned, "the dismissing court does not need to invoke any magic words or even use the word 'frivolous,' although such language certainly aids our review." *Id.* (citations omitted). "But the dismissing court must give some signal in its order that the action or appeal was frivolous." *Id.* So, in *Daker*, for example, the state argued that the three-strikes rule applied to the prisoner in that case because "six previous filings" by the prisoner "were frivolous." *Id.* at 1282, 1284. We disagreed. Because the six "prior orders gave no such signal" that the actions or appeals were dismissed on the grounds that they were frivolous, we found that the three-strikes rule did not apply. *Id.* at 1284. The prisoner could proceed in forma pauperis.

We apply the same rule for actions that were dismissed on the grounds that they were malicious or failed to state a claim. The same two phrases—"was dismissed" in the past tense and "on the grounds that"—modify the other potential grounds for a "strike" (maliciousness or failure to state a claim). *See* 28 U.S.C. § 1915(g). Thus, to count as a strike under the Act, we look to the prior order that dismissed the action (or appeal) and the reasons the court gave for dismissing it. In other words, we must interpret the prior order of dismissal and figure out what the dismissing court actually did. The dismissing court must give some signal that the action was dismissed because it was malicious or failed to state a claim.

No magic words are needed.  But the dismissing court must give some express statement to the effect that it dismissed the case because it was malicious or because it failed to state a claim.  The signal could include, for example, some statement that the dismissal was based on rule 12(b)(6), that the allegations did not plausibly state a claim, that the complaint failed to give a short and plain statement showing that the plaintiff is entitled to relief as required by rule 8, or that the complaint fell short under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).[3]  There must be some signal that the action was dismissed for maliciousness or failure to state a claim.

Applied to the three prior orders in this case—*Cook*, *Avery County*, and *Sterling*—there's no dispute about *Cook*.  Looking at the prior order in *Cook*, the parties agree that the district court's reason for the dismissal was that Wells failed to state a claim.  We agree.  After reviewing Wells's complaint under the Act's screening requirements, the dismissing court in *Cook* found that Wells "ha[d] failed to state a cognizable legal claim in his [c]omplaint."  And so the *Cook* order had an express statement to the effect that the

---

[3] These aren't meant to be the only examples.  There are surely others.  Nor will statements like the ones we've given always signal (in context) that the dismissal qualifies as a strike.  We give examples only to explain the kinds of signals or express statements in a prior order that would tend to qualify under the three-strikes rule.

action was dismissed for failure to state a claim upon which relief may be granted. That's strike one.

Although a closer call, we also agree with the district court that *Avery County* was a strike. There, the dismissing court conducted an "initial review" of Wells's complaint under the Act's screening requirements. "In conducting this review," the dismissing court said, it must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint—is frivolous, malicious, or fails to state a claim upon which relief may be granted." In its initial review, the *Avery County* court focused on Wells's admission in his complaint that "he did not participate in any internal grievance procedures while housed at the Avery County Jail or following his transfer to a new custodian." While Wells argued that he shouldn't be required to exhaust because "notifying" the sheriff of his "claims would [have] serve[d] no useful purpose," the *Avery County* court dismissed the complaint, reasoning that "exhaustion remains mandatory even where the inmate claims that exhaustion would be futile."

Although the *Avery County* court did not use any magic words in dismissing the action, it sent some signal in its order that the dismissal was on one of the grounds in the three-strikes rule. The only reason the *Avery County* court gave for the dismissal was its initial review of Wells's complaint. And the dismissing court told us exactly what it was looking for in conducting this review. The dismissing court said that in conducting its review it would either "identify cognizable claims or dismiss the complaint, or any

portion of the complaint," if it was "frivolous, malicious, or fail[ed] to state a claim." Those are the three-strikes grounds. By making an express statement that it was reviewing the complaint to see if it was frivolous, malicious, or failed to state a claim—and then dismissing the complaint upon completing that review—the dismissing court gave some signal in its order that it dismissed the action under one of the three grounds set out in the three-strikes rule. And so *Avery County* counts as strike two.

Wells raises two arguments for why *Avery County* wasn't a strike, but neither is persuasive. First, Wells contends that the dismissing court erred by focusing on his admission that he had not exhausted his administrative remedies. Wells argues that the *Avery County* court should not have considered the admission because it was outside the face of the complaint. Wells, in essence, is asking us to make a present-day determination about whether the *Avery County* court was right that the action failed to state a claim. But we can't do that.

As we've explained, "[b]y using the phrase 'was dismissed' in the past tense and the phrase 'on the grounds that,'" the three-strikes rule "instructs us to consult the *prior* order that dismissed the action or appeal and to identify the *reasons* that the court gave for dismissing it." *Daker*, 820 F.3d at 1284. In doing so, "[w]e must interpret the order of dismissal and figure out what the dismissing court actually did" rather than make a "*present-day* determination" about what the district court could or should have done. *Id.* If the *Avery County* court erred in considering Wells's admission

because it was outside the face of his complaint—something we do not decide today—the remedy was to directly appeal the dismissal and correct the error.  But he cannot collaterally attack the prior order by having us—nine years later—look behind the order and the reasons the district court gave for dismissing the complaint.

Second, Wells argues that *Avery County* isn't a strike because not every dismissal under the Act's screening requirements is a three-strikes rule dismissal.  *See Thompson*, 492 F.3d at 439 (declining to treat all dismissals under the Act's screening requirements as "presumptive strikes . . . because, for a variety of reasons, a complaint that is neither frivolous, malicious, nor fails to state a claim could nonetheless be dismissed" on other grounds, including "for lack of jurisdiction").  We agree.  Just because a court dismisses an action under the Act's screening requirements doesn't mean that it's a strike.  That's because it may have been dismissed for a reason other than that the action was frivolous, malicious, or failed to state a claim.  For example, a district court may screen a complaint but then dismiss it for lack of jurisdiction.

But here we know the reason for the dismissal under the screening requirements was for one of the three-strikes grounds.  That's because the *Avery County* court told us that in conducting its review it would dismiss the action if the complaint was frivolous, malicious, or failed to state a claim.  Those, of course, are the three-strikes grounds.  So, here, we have some signal in the prior order that the *Avery County* dismissal was on one of the grounds in the three-strikes rule.

But that signal is missing for the prior order in *Sterling*—Wells's final case. There's no indication that the *Sterling* court dismissed Wells's action as frivolous or malicious. Nor does the warden ever suggest that either of those three-strikes grounds apply to *Sterling*. So the question is whether *Sterling*'s summary judgment for lack of exhaustion counts as a "dismiss[al] on the grounds that . . . [Wells] fail[ed] to state a claim upon which relief may be granted." 28 U.S.C. § 1915(g). It doesn't.

Summary judgment based on evidence outside the face of the complaint or on something other than the allegations in the complaint is not a dismissal for failure to state a claim. *Cf. Speaker v. U.S. Dep't of Health & Hum. Servs. Ctrs. for Disease Control & Prevention*, 623 F.3d 1371, 1379 (11th Cir. 2010) ("If matters outside the pleadings are presented by the parties and considered by the district court, the [r]ule 12(b)(6) motion must be converted into a [r]ule 56 summary judgment motion."); *see also* Fed. R. Civ. P. 12(d) (same). "A complaint is subject to dismissal for failure to state a claim if the allegations, taken as true, show the plaintiff is not entitled to relief." *Jones*, 549 U.S. at 215. Summary judgment, on the other hand, asks "whether the *evidence* presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986) (emphasis added).

The *Sterling* court entered summary judgment for the prison officials based on *evidence* that Wells did not submit a timely grievance under the prison's grievance policy. The prison's

grievance policy required Wells to either informally resolve his grievance within eight days of the incident or begin the formal grievance process within five days of the alleged incident. The dismissing court found that Wells was on notice that the prison had interpreted his sentence erroneously, but he did not begin the informal or formal grievance process within the required time period.

In granting summary judgment for the prison officials, the dismissing court considered more than the allegations in Wells's complaint. The prior order considered the prison's grievance policy, Wells's letter to the prison, and a prison grievance administrator's declaration. The *Sterling* court, in short, granted summary judgment for the prison officials because, based on the evidence, there was no genuine dispute that Wells did not timely exhaust his administrative remedies. Because the *Sterling* court considered evidence outside the complaint, this was not a dismissal for failure to state a claim.

The warden offers two reasons for why *Sterling* should count as a strike, but we are unconvinced. First, the warden argues that "mixed" dismissals count as strikes. In other words, the warden claims that "*Sterling* is a strike because the entire complaint was dismissed" and *one* of Wells's claims was dismissed earlier in the case "on the grounds that the allegations failed to make out a claim." But the Prison Litigation Reform Act imposes a strike only where the "*action* . . . was dismissed on the grounds that it [was]

frivolous, malicious, or fail[ed] to state a claim upon which relief may be granted." 28 U.S.C. § 1915(g) (emphasis added).

And "the entire complaint"—the action—was not dismissed in *Sterling*. Wells's "medical glove claim" was "summarily dismisse[d] . . . without prejudice." But the *Sterling* court "decline[d] to summarily dismiss" Wells's "claim for wrongful imprisonment." The *Sterling* court later granted summary judgment on the wrongful imprisonment claim. But entering summary judgment on a claim is not a dismissal.[4] Although one of Wells's *claims* might've been dismissed, the *action* was not dismissed in *Sterling*.

Second, the warden also contends that the summary judgment order in *Sterling* was really a dismissal for failure to state a claim because it relied only on Wells's "own admissions," "attachments" to the complaint, and "judicially noticeable facts." But the *Sterling* court relied on more than admissions, attachments, and judicially noticed facts. It also relied on a declaration from the prison's grievance administrator. In his declaration, the

---

[4] That's not to say a district court can never dismiss an action on the grounds that it is frivolous, malicious, or failed to state a claim after the pleadings stage. Section 1915, after all, *requires* courts to dismiss a case "at any time" if it is "frivolous," "malicious," or "fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2). But although a district court can dismiss a case on a three-strikes ground at summary judgment (for example), that's not what happened here. The district court entered summary judgment based on evidence outside the complaint. It did not dismiss the case on the grounds that it was frivolous, malicious, or failed to state a claim.

administrator described the grievance process, stated that Wells used the prison's "electronic kiosk to send a message" to the prison "that he was being held beyond his max-out date" but that this message "was not processed," and explained that there were "no record[s]" of Wells "filing a grievance or appeal regarding the calculation of his sentence." Because the prior order relied on evidence outside the face of the complaint, it could not have been a dismissal for failure to state a claim.

## IV.    CONCLUSION

In the Act, as in baseball, two strikes are not enough. Wells had two strikes: *Cook* and *Avery County*. But because the *Sterling* summary judgment fell outside the strike zone, he didn't have a third. Without three strikes, the district court erred in dismissing Wells's complaint under the three-strikes rule. We thus reverse the dismissal and remand for further proceedings.[5]

**REVERSED AND REMANDED.**

---

[5] The Roderick & Solange MacArthur Justice Center (Easha Anand, Perry Cao, Rosalind Dillon, and Devi Rao) has commendably represented Wells throughout his appeal. The Georgia Attorney General's Office (Stephen Petrany) graciously accepted our invitation to represent the warden after we voted to rehear the appeal en banc. We appreciate counsel's service to the court.

21-10550    JORDAN, J., Concurring in the Judgment    1

JORDAN, Circuit Judge, Concurring in the Judgment:

I agree with the court that Mr. Wells does not have three strikes under the Prison Litigation Reform Act, 28 U.S.C. § 1915(g), but would only address the dismissal in the *Sterling* case because it is dispositive. I understand that the court's discussion of the dismissals in the *Cook* and *Avery County* cases may provide guidance to the bench and bar, but that discussion is unnecessary and could well be dicta. Once the dismissal in *Sterling* is not deemed to be a strike, it matters not how we characterize the dismissals in *Cook* and *Avery County*.

In my view, we should resolve this case based on a relatively simple proposition—that a dismissal for failure to exhaust is not a strike under the PLRA because such a disposition is not listed in § 1915(g) as one of the grounds that constitutes a strike. *See Daker v. Commissioner, Ga. Dep't of Corr.*, 820 F.3d 1278, 1283 (11th Cir. 2016) ("Three specific grounds render a dismissal a strike: 'frivolous,' 'malicious,' and 'fails to state a claim upon which relief can be granted.' Under the negative-implication cannon, these three grounds are the *only* grounds that can render a dismissal a strike."); *Green v. Young*, 454 F.3d 405, 409 (4th Cir. 2006) ("Because a dismissal for failure to exhaust is not listed in § 1915(g), it would be improper for us to read it into the statute. . . . [W]e we must honor Congress'[ ] deliberate omission from § 1915(g) of dismissals for failure to exhaust and conclude that a routine dismissal for failure to exhaust administrative remedies does not count as a strike under § 1915(g)."). *See also Owens v. Isaac*, 487 F.3d 561, 563 (8th Cir.

2007) ("The first case was dismissed without prejudice for failure to exhaust administrative remedies; such a dismissal is not a strike under [§] 1915(g)."); 16AA Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3970.1 (5th ed.) ("A dismissal that does not fit within any of the three categories does not count as a strike."). *Sterling*, which was dismissed for failure to exhaust administrative remedies, therefore does not count as a strike.

As the court notes in its opinion, there is language in *Jones v. Bock*, 549 U.S. 199 (2007), suggesting that a dismissal for failure to exhaust administrative remedies can sometimes constitute a dismissal for failure to state a claim. *See id.* at 216 ("that is not to say that failure to exhaust cannot be a basis for dismissal for failure to state a claim"). But I would not put too much stock in this snippet. Our post-*Jones* cases explain that "exhaustion of administrative remedies is a matter in abatement and not generally an adjudication on the merits." *Bryant v. Rich*, 530 F.3d 1368, 1374 (11th Cir. 2008). *See also Dimanche v. Brown*, 783 F.3d 1204, 1210 (11th Cir. 2015) (same). If a dismissal for failure to exhaust administrative remedies is not merits-based, *see Bryant*, 530 F.3d at 1374 (explaining that exhaustion "is nothing more than a precondition to adjudication on the merits"), I do not see how it can be fairly characterized as a dismissal for failure to state a claim, which is an adjudication on merits. Whether or not failure to exhaust administrative remedies can be determined from the face of the complaint says nothing about the nature of a dismissal on that ground.

21-10550                ROSENBAUM, J., Concurring                1

ROSENBAUM, Circuit Judge, joined by WILLIAM PRYOR, Chief Judge, and JILL PRYOR, Circuit Judge, concurring:

I join the Court's well-written and well-reasoned opinion in full. I write separately only to register my concern about dismissing actions for failure to exhaust based on a pro se prisoner's response to a yes/no check-box on form complaints that ask about exhaustion.

Today we hold that when a pro se prisoner admits on the face of her complaint that she hasn't exhausted her administrative remedies, a dismissal for failure to exhaust counts as a strike. Opinion at 17–18. I generally agree. But not all dismissals for failure to exhaust are created equal.

Take Jeremy Wells's suit against Avery County. There, the Western District of North Carolina's "Prison Civil Rights Act Complaint Form" asked him to answer—yes or no—whether he had "present[ed] the facts of each claim relating to [his] complaint to the Inmate Grievance Commission or any other available administrative remedy procedure?" And that question isn't unusual. In our Circuit, six of the nine districts' standard "pro se prisoner civil rights complaint" forms demand that the filer opine on whether she exhausted her prison remedies.[1]

---

[1] These courts include the Northern and Southern Districts of Alabama, all three district courts in Georgia, and the Middle District of Florida.

In my view, district courts should not require a pro se prisoner to answer such a question as a condition of filing a complaint. That is so for three reasons.

*First*, a plaintiff is "the master of the complaint." *See Holmes Grp., Inc. v. Vornado Air Circulation Sys., Inc.*, 535 U.S. 826, 831 (2002) (citing *Caterpillar Inc. v. Williams*, 482 U.S. 386, 398–99 (1987)). That should end the matter. After all, the Prisoner Litigation Reform Act (the "Act") does not justify a departure from the general rule. *Jones v. Bock*, 549 U.S. 199, 200 (2007) ("But the screening requirement does not—explicitly or implicitly—justify deviating from the usual procedural practice beyond the departures specified by the [Act] itself.").

*Second*, the Act requires exhaustion of *available* remedies, 42 U.S.C. § 1997e(a). And asking pro se prisoners whether they have exhausted *available* remedies demands too much. The Supreme Court has explained that a remedy is "unavailable" when (1) it is "a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) the administrative process is so opaque that it is "practically speaking, incapable of use"; or (3) prison administrators "thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. 632, 643–44 (2016).

A simple "check yes or no" box does not allow a pro se prisoner to explain that, while she might not have exhausted her remedies, a prison administrator "thwart[ed]" her from doing so, or the

21-10550                ROSENBAUM, J., Concurring                3

process was necessarily futile, or it was "practically speaking, incapable of use."  And even if the district-court form uses the word "available," it demands too much from pro se prisoners to expect them, based on that adjective, to understand that they are being asked whether any of the three exceptions to the exhaustion requirement that the Supreme Court has distilled applies.  Indeed, without saying so, forms like these effectively ask these pro se prisoners to act as the judge and render a legal conclusion about whether they should be excepted from the exhaustion requirement.  That's too much.

*Third*, as the Supreme Court has explained, failure to exhaust is an affirmative defense, and "inmates are not required to plead or demonstrate exhaustion in their complaints." *Jones*, 539 U.S. at 216.  "District courts may not circumvent this rule by . . . requiring prisoners to affirmatively plead exhaustion through local rules." *Coleman v. Sweetin*, 745 F.3d 756, 763 (5th Cir. 2014).  So they should not be able to circumvent it by requiring pro se prisoners to fill out a form that directs them to plead exhaustion.

The Warden responds that "[i]nmates are always free to leave portions of a form complaint blank."  But litigants aren't free to ignore district-court orders, and again, it asks too much of a pro se prisoner to separate a district-court form complaint (which contains instructions from the court) and a district-court order.  The Middle District of Georgia's form complaint, for instance, includes *multiple* warnings (accompanied by a healthy helping of underlining, bolding, and exclamation points) that failure to follow a given

instruction will result in dismissal.  Plus, we should not encourage pro se prisoners to ignore district-court instructions—even on forms.

One last point:  the district courts should make pro se prisoners aware of the mandatory administrative exhaustion requirement—but not by requiring them to plead exhaustion.  The Northern District of Florida, for instance, simply notifies filers—in bold italics—that "[i]f [the plaintiff] did not exhaust available remedies prior to filing this case, this case may be dismissed. . . .  Therefore, please consider whether you have fully exhausted your remedies before proceeding with this action."

In short, I respectfully urge district courts to cease use of and reliance on the yes/no check-box form question asking about exhaustion of remedies.  After all, if the grievance system in the prisoner's facility isn't available, then exhaustion isn't required.  And a pro se prisoner who doesn't have an available grievance system is exactly the person the federal courts should be open to hearing.